No. 2-09-1094    Filed: 11-18-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KENNETH D. KOEHLER, Local<br>Liquor Control Commissioner,<br>County of McHenry, | )<br>)<br>) | Appeal from the Circuit Court<br>of McHenry County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--MR--364 |
| | ) | |
| ILLINOIS LIQUOR CONTROL | ) | |
| COMMISSION ("ILCC"); IRVING J. | ) | |
| KOPPEL, as ILCC Chairman; | ) | |
| RACHINA-1, INC., d/b/a Mobil Speed Mart; | ) | |
| PATEL AVIND; PATEL SUNIL; and | ) | |
| PIYUSH JOSHI, | ) | Honorable |
| | ) | Michael T. Caldwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

On August 20, 2008, the McHenry County Local Liquor Control Commission (MLCC), through its commissioner, plaintiff Kenneth Koehler, revoked defendant Rachina-1, Inc.'s liquor license. Rachina-1 operates as a dramshop at a Mobil Speed Mart gas station in unincorporated McHenry County. Defendants Patel Avind, Patel Sunil, and Piyush Joshi are its owners. Rachina-1 appealed the license revocation to the Illinois Liquor Control Commission (ILCC). On September 24, 2008, the ILCC, through its commissioner, defendant Irving J. Koppel, modified the MLCC order by reducing the license revocation to a temporary license suspension. Plaintiff sought administrative review before the trial court, and on July 27, 2009, the court affirmed the ILCC order. On September

21, 2009, the court denied plaintiff's motion to reconsider. Plaintiff appeals. For the following reasons, we reverse the trial court's order affirming the ILCC and we reinstate the MLCC order.

## I. BACKGROUND

### A. MLCC Hearing

The facts are undisputed. On April 8, 2007, the MLCC issued to Rachina-1 a liquor license. On December 13, 2007, the McHenry County sheriff's department, along with the Illinois State Police and a representative from the ILCC, performed at Rachina-1 "an alcohol counter measure enforcement detail" (i.e., a sting operation) to monitor the sales of alcoholic beverages to minors. During the sting operation, one of Rachina-1's employees, Ramesh Barot, sold alcohol to a minor in violation of local and state laws. The MLCC issued to Rachina-1 a citation and notice of hearing, with a hearing date scheduled for June 11, 2008.

On December 27, 2007, 14 days after the first violation and before the hearing occurred, Barot again sold alcohol to a minor during a second sting operation. The MLCC issued to Rachina-1 a second citation and notice of hearing, again setting the hearing for June 11, 2008.

On June 3, 2008, co-owner Joshi submitted to the MLCC an affidavit in which he waived Rachina-1's right to a hearing, admitted to the two instances of sales of alcohol to a minor, and accepted from the MLCC the following penalties: (1) as a penalty for the first offense, a $1,000 fine; and (2) as a penalty for the second offense, a $1,500 fine. Rachina-1 paid both fines by June 11, 2008, and no hearing was held.

In addition to the MLCC-imposed penalties, Rachina-1 was also penalized by the ILCC for its infractions. Specifically, the ILCC imposed upon Rachina-1 a $500 fine for the first violation. For

the second violation, the ILCC imposed upon Rachina-1 a $2,500 fine and a three-day suspension of its state liquor license.

Approximately one month later, on July 16, 2008, Rachina-1, again through Barot, sold alcohol to a minor in a third sting operation. As before, the MLCC issued to Rachina-1 a citation and notice of hearing. This time, however, Rachina-1 did not waive its right to a hearing and, on August 20, 2008, the MLCC held a public hearing to determine whether Rachina-1's third violation should result in: (1) a third fine; (2) suspension of Rachina-1's liquor license; or (3) revocation of Rachina-1's liquor license.

Rachina-1's owners attended the hearing on its behalf. Joshi stipulated that, on three separate occasions in less than eight months, Barot sold alcohol to minors. The MLCC asked whether Rachina-1 had taken any remedial actions or had imposed upon Barot any punishment. Joshi stated that they spoke to Barot and provided him with advice on how to check identification. Joshi explained that they "told [Barot] everything, what happened, what is going on, he might lose the job and all that." Joshi told the MLCC that "we have been here [eight] years. We never had this problem. *** It is just a pure mistake. And I know that people make mistakes. So this time we let him go ***."

Joshi acknowledged that, after the first offense, the MLCC had recommended that Barot take BASSET training (a program designed to educate sellers of alcohol on how to responsibly serve and sell). Joshi stated that, because the second violation occurred two weeks after the first violation, Barot did not have time to enroll in the training until after the second violation. Although Barot had signed up for the course, which was scheduled to take place in July, the third violation, on July 16,

2008, occurred before he received the training. Joshi informed the MLCC that he had been in business at the Rachina-1 location for 8 years, that he had been in the business of selling alcoholic beverages for 15 years, and that "this has never happened." Joshi agreed that the ability to sell alcohol is a privilege. Joshi was asked why the owners did not terminate Barot after the second offense, especially given that it was two weeks after the first offense. He replied that they tried to, but that they have only a couple of employees and they could not "find" the right person (it is unclear whether Joshi meant that they could not "find," i.e., identify, which employee sold to minors, or whether they could not "find" the right person to replace Barot).

The MLCC voted to revoke Rachina-1's liquor license. In announcing the MLCC decision, several voting members stated their rationales therefor. Those bases included that: (1) as a liquor license holder, Rachina-1 was responsible for the actions of its employees and for ensuring that the employees were properly trained to follow the law; (2) despite a third violation, Rachina-1 had presented no plan for correcting the problem, nor had it taken any corrective action after the first two violations, such as firing Barot or scheduling a second person to work alongside Barot to ensure that he did not again sell alcohol to a minor; (3) holding a liquor license is a privilege and, here, Rachina-1 admitted selling alcohol to minors on three instances in an eight-month period; and (4) the MLCC's greatest responsibility is to protect the county's juveniles, that Rachina-1 had wantonly and on three occasions violated the privilege of holding a liquor license, and that "it is completely unacceptable to this Commission and this community's standards for that type of behavior." In conclusion, one member summarized:

"We are sorry for you that you weren't able to handle the responsibility. This is a privilege of our county to protect our children, protect the adults and the people who are driving. And especially seeing as you are in a place where cars are in motion all the time, to have 3 violations of this, it just shows our Committee that you don't take your responsibility seriously."

On August 20, 2008, the MLCC revocation order issued.

### B. ILCC Hearing

On September 9, 2008, Rachina-1 appealed the MLCC decision to the ILCC. 235 ILCS 5/7--9 (West 2008). On September 24, 2008, the ILCC held a hearing. There, Rachina-1 admitted that Barot, on three occasions in less than one year, sold alcohol to minors in violation of local and state laws. It noted that, after the first two violations, the ILCC had, separate from the MLCC, penalized Rachina-1 in the form of a $500 fine for the first violation and, for the second violation, a $2,500 fine and a three-day license suspension. Nevertheless, Rachina-1 argued that the MLCC's revocation of the liquor license after the third violation was too harsh a penalty, noting that Barot had since been fired. Rachina-1's counsel summarized as its argument that "the problem that my client had was one employee. He didn't have multiple employees, or different employees, selling alcohol to minors. It was just one employee [whom] he has terminated. He understands the gravity of the situation now ***." Counsel noted that, in eight years of business, the violations all happened in one year and due to one employee's actions.[1]

---

[1]Joshi testified before the ILCC that there is a liquor store in the Village of Huntley that

The ILCC, noting that Rachina-1 had been in business for eight years, asked plaintiff's counsel whether it was typical for McHenry County to revoke a license after three violations.[2] Plaintiff's counsel responded that she was not aware of the MLCC having ever before revoked a license. Counsel argued that the license revocation, given the circumstances of repeated violations in a relatively short period, was not too severe a penalty.

On September 24, 2008, the ILCC issued an order modifying the MLCC decision. The ILCC suspended Rachina-1's license for 30 consecutive days after the date of its order and stated:

> "The modification of the penalty is based upon the fact that the Local Liquor Control Commissioner has not followed a progressive discipline plan by way of a suspension of [Rachina-1's] license prior to revocation."

On November 24, 2008, the ILCC denied plaintiff's petition for rehearing.

## C. Trial Court

---

maintains its license despite having received three tickets in one day. No objection was raised to this statement, but plaintiff's counsel confirmed for the ILCC that, in the Village of Huntley, the mayor, not MLCC, is responsible for liquor licenses.

[2]Koppel, ILCC's chairman, also noted on several occasions that Rachina-1 had been the target of three sting operations in eight months. A member of the ILCC reminded Koppel that the ILCC and the State Police had participated in the stings with the McHenry County sheriff's department and that stings are repeated at failing locations.

On December 23, 2008, plaintiff filed with the trial court a complaint seeking administrative review. 235 ILCS 5/7--11 (West 2008). Plaintiff's complaint alleged that the ILCC decision was erroneous because: (1) Rachina-1 was subjected to progressive discipline where, prior to the license revocation, the MLCC had imposed two, progressively increasing fines and where the ILCC had imposed, in addition to fines, a three-day license suspension; and (2) in any event, the MLCC was not required to follow a progressive discipline plan prior to revoking a liquor license. Further, in a footnote in plaintiff's reply to the ILCC and Koppel's memorandum in support of the ILCC order, plaintiff noted:

> "Although Rachina-1's attorney stated at the ILCC hearing that the offending employee had 'since been terminated,' this evidence was outside the scope of the record before the ILCC and should not have been considered. *** It is clear from the MLCC hearing transcript that as of the date of that hearing, Ramesh Barot was still employed with Rachina-1 and that he had not taken BASSET training. Thus, the ILCC clearly erred when it considered Ramesh Barot's termination as a mitigating factor when it assessed a penalty."[3]

In addition, plaintiff reiterated in its reply to Rachina-1 and its owners' memorandum in support of the ILCC order that it was clear that, at the time of the MLCC hearing, Barot had not been fired.

After a hearing, the trial court, on July 27, 2009, affirmed the ILCC order. In its memorandum opinion, the court concluded that the following factors supported the ILCC decision:

---

[3]The Act permits the ILCC to review only the record that was before the MLCC. 235 ILCS 5/7--9 (West 2008).

(1) that, prior to the license revocation, there had been only one enforcement proceeding against Rachina-1, notwithstanding the fact that it was comprised of two counts; (2) Rachina-1 had been in business for eight years without any prior violations of the local liquor ordinance; (3) all three violations were committed by the same employee during sting operations; (4) given that the offending employee was no longer employed by Rachina-1 at the time of the ILCC hearing, Rachina-1 offered proof of remedial measures to ensure future compliance; and (5) "there is the suggestion of disparate treatment by another licensee for similar violations."[4] The court found that, "assuming" the ILCC has "a policy of graduated penalties," amending the MLCC order to impose a suspension was an appropriate exercise of ILCC's power. "Requiring a suspension of a local liquor license between the penalties of fine and revocation is a reasonable policy." The court held that, viewing the facts in plaintiff's favor, it could not say that revocation was the only appropriate penalty for Rachina-1's violations.

In the alternative, the court noted that, even if: (1) the ILCC does not have a policy of graduated enforcement; (2) Rachina-1's record was considered as two cases or violations, rather than one; (3) Barot still worked for Rachina-1; and (4) there was no suggestion of disparate treatment, revocation could still be considered an excessive penalty . The court reasoned as follows:

---

[4]The court noted that, at the ILCC hearing, Joshi had advised the ILCC that his store had been in business for eight years without a prior violation, that the offending employee had been terminated, and that, when a liquor store in Huntley had three violations, it had not received a license revocation. The court further noted that this testimony came into the record without objection.

"When three possible penalties are available to a regulatory body, employing the most stringent penalty in the absence of particularly egregious conduct can be viewed as inappropriate. In the present case, the local liquor commissioner progressed from fine to increased fine and then revocation of the license. No suspension was imposed. This was done to punish conduct initiated by the county in its sting operations rather than to punish aberrant conduct occurring independently."

Thus, the court found that, under any circumstances, the ILCC order modifying the MLCC order was within its discretion. On September 21, 2009, the court denied plaintiff's motion to reconsider. Plaintiff appeals.

## II. ANALYSIS

### A. Standards of Review

The parties disagree on: (1) the standard of review we should apply to the ILCC decision; and (2) whether our review of the ILCC decision necessitates consideration of the MLCC order. We address each issue in turn.

### 1. Appellate Court Review of Agency Decision

It is clear that, in an appeal from the judgment in an administrative proceeding, the appellate court reviews the administrative agency's decision, not the trial court's. Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515 (2005). The parties agree that we do not review the ILCC's decision under the manifest-weight-of-the-evidence standard, as reasoned by an older line of cases. See, e.g., Simmons v. Illinois Liquor Control Comm'n, 92 Ill. App. 3d 387, 392 (1980); Kessell v. Illinois Liquor Control Comm'n, 56 Ill. App. 3d 485, 490-91 (1978). However, while

No. 2--09--1094

defendants assert that the abuse-of-discretion standard is applicable (see, e.g., Jacquelyn's Lounge, Inc. v. License Appeal Comm'n, 277 Ill. App. 3d 959, 967 (1996); Hanson v. Illinois Liquor Control Comm'n, 201 Ill. App. 3d 974, 984 (1990); Soldano v. Illinois Liquor Control Comm'n, 131 Ill. App. 3d 10, 16 (1985)), plaintiff asserts that more recent cases from our supreme court hold that the standard of review applicable to an administrative agency decision depends upon the question presented. We agree with plaintiff.

The Liquor Control Act of 1934 (Act) (235 ILCS 5/1--1 et seq. (West 2008)) provides that final decisions of the ILCC are subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2008)). 235 ILCS 5/7--11 (West 2008). Our supreme court has held that, where judicial review of an agency decision is governed by the Administrative Review Law, "[t]he applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 390 (2001). An agency's findings of fact will be upheld unless contrary to the manifest weight of the evidence, while we review de novo its rulings on questions of law. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 210 (2008). An agency's decisions on mixed questions of law and fact will be upheld unless clearly erroneous. Cinkus, 228 Ill. 2d at 211. A mixed question of law and fact is one where the historical facts are admitted and the rule of law is undisputed, but the issue is whether: (1) the facts satisfy the statutory standard, or (2) the rule of law as applied to the facts was violated. AFM Messenger, 198 Ill. 2d at 391. "Clearly erroneous" is an intermediate standard between de novo and manifest-weight review, is somewhat deferential to

-10-

the agency, and means that the agency's decision will be reversed only where the reviewing court is left with a definite and firm conviction that a mistake has been committed. AFM Messenger, 198 Ill. 2d at 392, 395; see also Cinkus, 228 Ill. 2d at 211-12 (reaffirming AFM Messenger's elucidation of the "clearly erroneous" standard of review). "That the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the agency's decision." AFM Messenger, 198 Ill. 2d at 395.

There are no disputes here regarding the historical facts or the law. As for the facts, Rachina-1 admitted the alleged violations, and there are no factual disputes regarding the underlying events or proceedings. As for the applicable law, there is no dispute that the Act grants the ILCC authority to hear and determine appeals from the local commission (235 ILCS 5/3--12(a)(6) (West 2008)) and that, in doing so, the ILCC applies section 7--9 of the Act (235 ILCS 5/7--9 (West 2008)). Thus, the question presented here is a mixed question of law and fact, namely, whether, under these facts, the ILCC's review complied with section 7--9 of the Act. See AFM Messenger, 198 Ill. 2d at 391. Accordingly, we review the ILCC's decision under the "clearly erroneous" standard.

### 2. ILCC's Review of MLCC

Next, we address whether our review of the ILCC decision involves consideration of the MLCC order. Specifically, defendants assert that our review of the ILCC decision requires that we determine only whether the ILCC exceeded its authority when it suspended Rachina-1's license. While defendants agree with plaintiff that the ILCC was not, here, authorized to apply de novo

review,[5] and that the ILCC was required to consider the propriety of the MLCC decision by applying section 7--9 of the Act, they do not explicitly state whether the ILCC was required to consider the MLCC decision with any deference.

We disagree with defendants' suggestion that our review of the ILCC decision is entirely divorced from the MLCC order. To determine whether the ILCC order modifying the MLCC order is clearly erroneous, we must ascertain the standard of review or deference, if any, the ILCC was required to give to the local agency's decision. For the following reasons, we conclude that the Act requires that the ILCC, in applying section 7--9, determine whether the local agency abused its discretion.

Section 7--9 of the Act provides:

"The [ILCC] shall review the propriety of the order or action of the local liquor control commissioner [being appealed] and shall consider the following questions:

(a) whether the local liquor control commissioner has proceeded in the manner provided by law;

(b) whether the order is supported by the findings;

(c) whether the findings are supported by substantial evidence in the light of the whole record.

---

[5]The parties agree that, while the Act provides that the ILCC may review de novo an appeal in specific circumstances, namely, when city populations meet specified parameters (see 235 ILCS 5/7--9 (West 2008)), de novo review was not appropriate in this case.

The <u>only</u> evidence which may be considered in the review [by the ILCC], shall be the evidence found in the certified official record of the proceedings of the local liquor control commissioner. No new or additional evidence shall be admitted or considered. The [ILCC] shall render a decision affirming, reversing or modifying the order or action reviewed within 30 days after the appeal was heard." (Emphases added.) 235 ILCS 5/7--9 (West 2008).

In <u>Kessell</u>, the court considered the meaning of the ILCC's review of the "propriety" of an order. <u>Kessell</u>, 56 Ill. App. 3d at 489-90. There, the court held that such review mandated assessment of the discretion used by the local authority, stating that "[t]he function of the State commission, then, in conducting a review on the record of license suspension proceedings before a local liquor control commissioner is to consider whether the local commissioner committed an abuse of discretion." <u>Kessell</u>, 56 Ill. App. 3d at 490 (citing <u>Weinstein v. Daley</u>, 85 Ill. App. 2d 470, 481-82 (1967) (question of revocation of a liquor license "presents a peculiarly local problem which can be best solved by the respective [l]ocal [c]ommissioners who, because of their proximity to and familiarity with the situation, have greater access to information from which an intelligent determination can be made. That determination should not be disturbed in the absence of a clear abuse of discretion"), and <u>Nechi v. Daley</u>, 40 Ill. App. 2d 326, 337 (1963), quoting <u>Dahy v. Licence Appeal Comm'n</u>, 11 Ill. App. 2d 421, 425-26 (1956) (judicial inquiry of the propriety of a public authority's actions involves " 'judgment upon the discretion and wisdom exercised in the circumstances' " (emphasis omitted), such that " 'the issue on appeal is whether or not the local commissioner abused his discretionary power, and whether he acted arbitrarily and without good cause' ")); see also <u>Roach Enterprises, Inc. v. Licence Appeal Comm'n</u>, 277 Ill. App. 3d 523, 529

(1996) (under the Act, local commissioners have considerable discretion to revoke liquor licenses); Daley v. License Appeal Comm'n, 11 Ill. App. 2d 421, 425-26 (1956) (rejecting argument that, on appeal, state commission may make independent findings akin to de novo review, noting that the Act grants the local commissioner discretionary power to grant or revoke liquor licenses and that, "[i]f the local commissioner does not have this discretion, his decisions in these matters are of no more effect than a recommendation to the [appeals commission.] This is clearly not contemplated by the language of the statute").[6]

The foregoing case law reflects that the Act, in mandating that the ILCC review the "propriety" of the MLCC order, requires the ILCC to determine whether the MLCC abused its discretion, by considering only the record that was before the MLCC and determining: (1) whether the MLCC proceeded in a manner provided by law; (2) whether the MLCC order is supported by the findings; and (3) whether the MLCC findings are supported by substantial evidence in light of the

---

[6]We note, too, that the historical and statutory notes accompanying section 7--9 reflect that, when originally enacted, section 7--9 provided that an appeal from the local commission to the state commission would be reviewed de novo in all circumstances. However, pursuant to amendments that became effective August 19, 1961, the section was rewritten to require the state commission to consider the three questions of whether the local commission proceeded in a manner provided by law, whether the order is supported by the findings, and whether the findings are supported by substantial evidence in light of the entire record. To us, the inference to be drawn from this change is that the legislature intended to provide more deferential review of the local agency's decision.

whole record. 235 ILCS 5/7--9 (West 2008). Therefore, we do not merely review whether the ILCC was within its authority to impose upon Rachina-1 a license suspension. Rather, more specifically, to determine whether the ILCC order was clearly erroneous, we consider whether the ILCC considered the propriety of the MLCC decision by applying the three factors set forth in section 7--9 of the Act to determine whether the MLCC abused its discretion.

### B. ILCC Order is Clearly Erroneous

Turning now to the merits of the appeal, plaintiff argues that the ILCC order is clearly erroneous because application of section 7--9 of the Act reflects that the MLCC did not abuse its discretion and that it properly ordered a revocation of Rachina-1's license. Specifically, plaintiff argues that the three section 7--9 questions could be answered only in the affirmative. Plaintiff suggests that the ILCC did not even consider those questions, noting that the ILCC order did not state that the MLCC had erred under any of the section 7--9 factors. Rather, the only specified basis for the ILCC's decision was that the MLCC did not previously impose against Rachina-1 progressive discipline in the form of a license suspension. Plaintiff argues that there is no requirement under the Act or otherwise that a local commissioner impose progressive discipline for a series of violations; indeed, he notes that the Act permits the local commissioner to revoke a license at his or her discretion upon any violation of a state or local liquor law (235 ILCS 5/7--5 (West 2008)). Moreover, plaintiff argues, the ILCC's order ignored that Rachina-1 was the recipient of progressive discipline because, before the license revocation, Rachina-1 was penalized with fines for its first infraction, increased fines for the second infraction, and, also for the second infraction, a temporary license suspension by the ILCC. Thus, plaintiff argues, the MLCC did not abuse its discretion in

imposing a license revocation for the third infraction where it was aware that progressively increasing fines and a license suspension had not remedied the problem. We agree and conclude that the ILCC order is clearly erroneous.

Applying the section 7--9 factors, first, the MLCC proceeded in a manner provided by law. There are no challenges here to the procedures employed by the MLCC (i.e., notice, hearing, etc.), and the Act provides that a local commission may revoke or suspend a license issued by it if it determines that the licensee has violated any provisions of state or local liquor law. 235 ILCS 5/7--5 (West 2008); see also Jacquelyn's Lounge, Inc., 277 Ill. App. 3d at 966 ("It is well established that the violation of any statute, ordinance, or regulation related fairly to the control of liquor, upon liquor-licensed premises, generally constitutes cause for revocation of a license"); Roach, 277 Ill. App. 3d at 529 (local commissioner has wide discretion in revoking license for cause). Second, the MLCC's order was supported by the findings. The MLCC revoked the license based on its finding that Rachina-1 had sold alcohol to minors in violation of state and local law. As noted, the MLCC would have been within its authority to revoke the license on one violation alone; however, here, it found that Rachina-1 had violated state and local law, in the same manner and through the same employee, three times in an eight-month period. Third, all of these findings were supported by substantial evidence in light of the whole record, because Rachina-1 admitted to all three violations.

On appeal, defendants agree that the ILCC did not, in its order, specify under which of the foregoing section 7--9 questions it found error in the MLCC order. Nevertheless, defendants note that the ILCC was not required to make specific findings and, in any event, that implicit in the ILCC order was a finding that the MLCC erred on a section 7--9 factor; namely, the first--that the MLCC

did not proceed in a manner provided by law--because it did not impose progressive discipline. Accordingly, noting that courts have held that imposing progressive discipline is not an abuse of discretion (see, e.g., Addison Group, Inc. v. Daley, 382 Ill. App. 3d 1036 (2008)) and that section 7--9 provides that the ILCC may affirm, reverse, or modify the local commission's order, defendants argue that the ILCC clearly acted within its discretion to modify the order to institute a sanction reflecting progressive discipline.

We reject defendants' arguments for three reasons. First, we note that, while defendants are correct that the ILCC is not required under the Act to specify the bases for its decision, the absence of specific bases weakens the force of its determination (see One Way Liquors, Inc. v. Byrne, 105 Ill. App. 3d 856, 861-62 (1982); Kessell, 56 Ill. App. 3d at 490). Thus, to the extent our "clearly erroneous" review requires some deference to the agency's decision (AFM Messenger, 198 Ill. 2d at 392), that deference is somewhat diminished by the absence of specific findings of error under section 7--9.

Second, defendants' arguments miss the mark. There is no question that the Act generally permits the ILCC to affirm, reverse, or modify the local commission's order and that progressive discipline can be an appropriate method for implementing sanctions. Rather, the question here involves whether there was a proper basis under the Act for modifying the MLCC order to impose a different, albeit available, remedy, given that the ILCC was not to assess de novo the appropriate sanction, but, rather, was to apply the section 7--9 factors to determine the "propriety" of the MLCC order (i.e., whether the MLCC abused its discretion). In other words, while the ILCC might have

thought that the penalty was harsh and that it would have imposed a different penalty, it was not authorized under the Act to merely substitute its judgment for that of the MLCC.

Third, the sole specified basis for the ILCC's modification is unsupported by the record and arbitrary (see Albazzaz v. Department of Professional Regulation, 314 Ill. App. 3d 97, 101-02 (2000) (reviewing court may reverse agency's decision to impose certain sanctions if it finds that the agency abused its discretion by imposing a sanction that is unreasonable or arbitrary)). Preliminarily, the ILCC concluded that the MLCC erred because it failed to implement progressive discipline in the form of a license suspension before a license revocation. However, defendants point to no authority reflecting that progressive discipline (specifically, that a suspension must precede a revocation) is a law, policy, rule, or regulation with which a local commission must comply. The ILCC's position in this case--that progressive discipline should or must be imposed in a series of violations--seemingly suggests that the MLCC has no authority to revoke a license on an initial violation. This, clearly, flies in the face of the Act's provisions. 235 ILCS 5/7--5 (West 2008). Moreover, even if progressive discipline is a policy or recommended course of action in such cases, we agree with plaintiff that the record reflects that Rachina-1 was the recipient of progressive discipline, including a license suspension, prior to the revocation. Defendants do not explain why or under what authority they find support for the notion that, for progressive discipline to be properly imposed, the MLCC was required to impose a sanction of suspension, where it had already imposed progressive fines and where it was aware that the ILCC had imposed a suspension prior to Rachina-1's third violation. Surely, the MLCC, when considering appropriate sanctions for repeated violations, need not operate as though it has no knowledge of the ILCC's actions.

To the extent that defendants argue that the MLCC abused its discretion simply because the penalty was too harsh under the circumstances, we disagree. In support of their position, defendants cite cases where the revocation of liquor licenses was reversed as too harsh, but those cases are distinguishable in significant respects. In each case, the court found that the local commission acted unreasonably and arbitrarily by imposing a license revocation after one violation and where the owner had no knowledge of the actions that caused the violation. Jacquelyn's Lounge, Inc., 277 Ill. App. 3d at 967 (plaintiffs were unaware of the sale of cocaine on their premises and had no prior license violations in eight years of holding their liquor license); Hanson, 201 Ill. App. 3d at 984 (plaintiffs were unaware of the sale of cocaine at their bar and had no previous license violation in 5½ years of operation); Soldano, 131 Ill. App. 3d at 16 (plaintiff operated his business for 40 years with no prior license violations). In contrast, we find no such circumstances here. Defendants make much of the fact that they had "no prior violations" in eight years of operation at the Mobil Speed Mart. This is belied by the record. Indeed, Rachina-1's license was revoked after the third violation. The fact that the first two violations occurred shortly before the third violation does not operate to combine the three violations into one "big" violation. Moreover, unlike in the foregoing cases, the record reflects that defendants had knowledge of the conduct giving rise to the violations. The owners were notified after each violation and the behavior remained uncorrected; Barot was apparently not terminated until after the MLCC rendered its order. In that vein, we find this case more similar to Spiros Lounge, Inc. v. Illinois Liquor Control Comm'n, 98 Ill. App. 3d 280, 287-88 (1981), where the appellate court reversed the trial court's reversal of a license revocation, finding that the local and state commissions acted reasonably by suspending and then revoking a license upon finding that the licensee served

liquor to minors twice in a five-month period. Here, the MLCC acted reasonably by imposing progressively increasing fines and then revoking the license where it found that Rachina-1 served liquor to minors on three occasions in an eight-month period.

Finally, we wish to address defendants' suggestion that there is insufficient evidence in the record to support the MLCC's findings that Rachina-1 took no meaningful action after the first two violations. Defendants note that Joshi spoke to Barot about checking identification, told him "everything that was going on," and, after the third offense, terminated him. However, when the MLCC rendered its order, it was aware that the only actions taken by Rachina-1 after the first two violations were to speak to Barot and to refer Barot to training, which he had not yet done. These facts reflect that the MLCC's finding that Rachina-1 took no meaningful action after the first two violations was supported by the record before it. As to the termination after the third offense, and as evidenced by plaintiff's briefs before the trial court, the evidence relayed at the MLCC hearing never explicitly reflected that Barot had been terminated, let alone when. In any event, whether or not Barot had been terminated, the record before it supported the MLCC's finding that Rachina-1 took no meaningful action after the first two violations and before the third violation (and subsequent termination) occurred. Accordingly, and as previously indicated, the MLCC did not abuse its discretion in revoking the license.

In conclusion, our review leaves us with a definite and firm conviction that the ILCC's order is clearly erroneous. We reverse the trial court's order affirming the ILCC order and we reinstate the MLCC order.

## III. CONCLUSION

-20-

For the foregoing reasons, the judgment of the circuit court of McHenry County is reversed.

Reversed.

BURKE and HUDSON, JJ., concur.