2024 IL App (1st) 221691

SIXTH DIVISION
May 24, 2024

No. 1-22-1691

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| GIGGS BAJWA CORPORATION, d/b/a Gas Depot Express Market, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22 CH 881 |
| | ) | |
| CYNTHIA BERG, Chairman of the Illinois Liquor Control Commission, THE ILLINOIS LIQUOR CONTROL COMMISSION; CHRISTOPHER CLARK, Local Liquor Control Commissioner of the City of Harvey; and THE HARVEY LIQUOR CONTROL COMMISSION, | ) ) ) ) ) ) ) | The Honorable Anna Helen Demacopoulos, Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     This is an appeal of an administrative decision by defendant-appellee the Illinois Liquor Control Commission (State Liquor Commission) affirming a decision by the Harvey Liquor Control Commission (Harvey) not to renew the liquor license of plaintiff-appellant Giggs Bajwa Corporation (Giggs). For the reasons explained below, we cannot find that the State

Liquor Commission clearly erred in finding that Harvey did not abuse its discretion by declining to renew Giggs's license, and, thus, we affirm.

¶ 2                                                  BACKGROUND

¶ 3                                            I. The Harvey Order

¶ 4          On December 22, 2020, Harvey issued a decision declining to renew Giggs's liquor license. The order stated that a hearing on the matter was held on December 17, 2020, and that the following findings were made.

¶ 5          On November 13, 2020, a notice was sent by (1) regular mail and "UPS Next Day Delivery" to Giggs and (2) e-mail to Giggs's attorneys. The notice stated that it was a "Notice of Hearing for Intent to Not Renew A City of Harvey Liquor License" and that the hearing was scheduled for November 20, 2020. At the request of Giggs's attorneys, the hearing was rescheduled to December 2, 2020.

¶ 6          At the December 2, 2020, hearing, Giggs's counsel again requested a continuance, which was granted without objection, and the hearing was rescheduled to December 17, 2020. Although the December 17 hearing was scheduled to take place in person, Giggs's attorney elected to participate remotely via Zoom.

¶ 7          At the December 17 hearing, it was established that Giggs received a liquor license renewal packet and instructions on August 6, 2020, which was approximately two months prior to the October 2, 2020, submission deadline stated in the packet.

¶ 8          The packet had an instructional cover letter from the mayor of Harvey stating the following, underlined and in bold, on the first page:

"The deadline to submit a completed application and all required information and documentation is Friday, October 2, 2020. No applications will be accepted for

consideration for liquor licenses for the 2020-2021 license year after that date, and no supplemental information or documentation will be accepted after that date." (Emphasis omitted.)

The letter put recipients on notice that "no supplemental information or documentation will be accepted after that date."

¶ 9     In order to aid recipients in meeting what was declared to be a drop-dead deadline, the packet provided Giggs and other licensees with an option for early review of, and assistance with, preliminary applications that were furnished by September 1, 2020. Giggs declined to take advantage of this opportunity.

¶ 10     On or close to the October 2, 2020, application deadline, Giggs submitted its renewal application. As of October 2, 2020, its application was incomplete in that Giggs did not provide (1) its articles of incorporation, (2) its sales and use tax forms and surcharge return forms for November 2019 through the current date, (3) its drink excise tax return forms for the 2019-20 license year showing payment, (4) a certificate of insurance reflecting workers' compensation coverage, and (5) a certificate of occupancy for the licensed premises.

¶ 11     On the morning of the December 2, 2020, hearing, Giggs filed item (4) above, which was a copy of its certificate of liability insurance. Giggs also filed a portion of item (2) above, namely sales and use tax forms for the 2019 calendar year, but not for the 2020 calendar year, as required by the packet.

¶ 12     On December 16, 2020, the day before the now-twice rescheduled hearing, Giggs furnished a portion of item (3) above, namely drink excise tax return forms for November 2019 through November 2020. However, no drink excise tax payments accompanied the forms, as of the December 17, 2020, hearing.

¶ 13    After the missing payments were discussed at the December 17, 2020, hearing, payment was tendered by Giggs at the close of the December 17 hearing. However, as of the close of the December 17 hearing, Giggs had still not submitted any sales and use tax forms for the calendar year 2020 (part of item (2) above), and still had not submitted item (1) above, its articles of incorporation, or item (5) above, its certificate of occupancy.

¶ 14    Regarding its certificate of occupancy, Giggs explained at the December 17 hearing that Giggs did not own the property and had been unsuccessful in its attempts to contact its international landlord to obtain the certificate.

¶ 15    On December 18, 2020, which was after the close of the December 17 hearing but before the issuance of the Harvey order on December 22, Giggs provided item (1) above, its articles of incorporation, and a portion of item (2) above, namely its sales and use tax forms for the calendar year 2020.

¶ 16    Based on the foregoing recitation of facts, the order found, among other things, that a final deadline of October 2, 2020, had been established and that the cover letter had alerted Giggs two months prior to this deadline that no belated items would be accepted. Further, the order found that Giggs had been given an optional opportunity for early review and assistance, if it submitted its packet by the preliminary submission deadline of September 1, 2020, an option that Giggs chose not to exercise. The order concluded that Giggs's "piecemeal tenders of outstanding records two months after the deadline and, in some cases, after the conclusion of the Hearing, was not adequate to demonstrate compliance with the *** time-sensitive liquor license cycle."

¶ 17    The order explained that "accepting supplementary application materials more than two months after an established deadline would require" Harvey "to allow all licensees to belatedly

4

supplement deficient applications months after the fact and frustrate liquor license application processing." The order stated that it was "a final and appealable order, appealable to the Illinois State Liquor Control Commission" within 20 days of receiving the order.

¶ 18                                    II. The State Liquor Commission Order

¶ 19            On November 17, 2021, the State Liquor Commission issued an order that made the following findings.

¶ 20            On January 7, 2021, Giggs had filed a petition of appeal with the State Liquor Commission, which held its hearing on October 4, 2021. The commission reviewed the record and deliberated on the matter at its November 17, 2021, meeting, where it decided to affirm the Harvey order.

¶ 21            The commission's order stated that the governing statute required it to consider three questions: (1) whether the local agency proceeded in the manner prescribed by law, (2) whether the order is supported by its findings, and (3) whether the findings were supported by substantial evidence in light of the whole record. 235 ILCS 5/7-9 (West 2020).

¶ 22            The commission noted that, when considering these three statutorily prescribed questions, its duty was to determine whether the local agency had abused its discretion. In support of this proposition, it cited *Koehler v. Illinois Liquor Control Comm'n*, 405 Ill. App. 3d 1071, 1080 (2010) (State Liquor Commission must "determine whether the local agency abused its discretion").

¶ 23            With respect to the initial due process question, the commission found that "[t]he record" before it "consists of uncontested facts related to the timeline" of the renewal process. The commission found that a review of the record established that Harvey gave Giggs

"adequate notice of license renewal and sufficient due process prior to issuing a December 22, 2020, order to deny the renewal."

¶ 24    With respect to the third question, regarding whether the factual findings were supported by the evidence, the commission noted that Giggs did not contest most of the facts in the Harvey order. The commission observed that an agency's findings of fact must be affirmed unless they are against the manifest weight of the evidence. *Daley v. El Flanboyan Corp.*, 321 Ill. App. 3d 68, 71 (2001) ("Upon review, an agency's findings of fact are held to be *prima facie* true and correct, and they must be affirmed unless the court concludes that they are against the manifest weight of the evidence."). Without opposing argument, the commission adopted the facts in the Harvey order that detailed Giggs's various omissions at the various points along the timeline.

¶ 25    With respect to the second question, about whether the order is supported by its findings, the commission analyzed whether "the findings contained within the order constitute grounds to deny the renewal of the license." The commission stated that the issue was not whether it would decide on a more lenient penalty if it were reviewing the issue initially but whether, in choosing the particular penalty, the agency acted unreasonably or arbitrarily or selected a penalty unrelated to the needs of the agency or the statute. In support of this standard of review, the commission cited *Jacquelyn's Lounge, Inc. v. License Appeal Comm'n of Chicago*, 277 Ill. App. 3d 959, 966 (1996).

¶ 26    The commission noted that "the essence" of Giggs's argument is not whether it turned in an incomplete application but whether the penalty imposed on it was an unreasonable and arbitrary abuse of discretion. Giggs argued that prior caselaw established that the revocation of a license was an abuse of discretion where there was but a single violation that the owner

had no knowledge of and where there were no prior violations. The commission did not take issue with this proposition but found that the analogy between it and Giggs's situation was flawed. The commission noted that, contrary to the scenario that Giggs advanced, there was not a single violation; rather, Giggs was given multiple opportunities to correct its submission and failed each time. The commission found that Harvey gave Giggs "every opportunity to comply" before deciding not to renew its license.

¶ 27    The commission noted that, while Giggs may find it harsh to have a nonrenewal of its license for untimely submission of its documents and payments, Harvey had "to spend considerable time and resources" on this one case. The commission observed that, if Harvey had to expend "similar resources on all or even many of its other license holders, it would significantly hinder Harvey government operations."

¶ 28    The commission concluded: "While not every local commission would refuse to renew a liquor license under these circumstances, Harvey has the right to hold a firm line in denying the renewal of [Giggs's] license for document submission failures." The commission noted that "not only was Giggs deficient in providing documents for the renewal but it was delinquent in the payment of taxes." After the commission affirmed the Harvey order, Giggs filed a petition for rehearing on January 7, 2022, which the commission denied on January 19, 2022.

¶ 29                                 III. The Circuit Court Order

¶ 30    On February 1, 2022, Giggs submitted a complaint in Cook County circuit court for administrative review. On February 10, 2022, the trial court entered a stay of the agency's decision pending the court's review. At the subsequent hearing held on October 26, 2022, Giggs's attorney began the hearing by stating that "the main issue here is the facts are not really disputed. What is disputed is the application of the law to those facts." Giggs argued that

7

Harvey abused its discretion by refusing to renew for the relatively minor "offense of not submitting all of its materials by the City-imposed deadline." Giggs argued that the nonrenewal was an abuse of discretion where the reason used to justify the nonrenewal was relatively minor and where the licensee had an otherwise clean record.

¶ 31        During the hearing, the trial court and Giggs's counsel had the following exchange, which established that what was at issue was not the giving of a sanction but the severity of the sanction given:

> "THE COURT: So you're really only questioning the sanction.
>
> [COUNSEL]: The severity of the sanction, yes. And we are not—we are not saying Harvey had no business sanctioning [Giggs] for not getting the material in on time. We have never said that.
>
> We are just saying this is an abuse of discretion to apply a sanction this severe for a violation of this nature. And I don't mean to say no—this is—this is minimal, *de minimis*, I'm simply saying it does not justify denying [Giggs] renewal of [its] license."

After the above exchange, Giggs's counsel confirmed that there was "no dispute" regarding (1) receipt of the renewal notice, (2) what documents were required, (3) Giggs's failure to produce the required documents by the October 2 submission deadline, and (4) its failure to produce all the documents prior to the December 17 hearing.

¶ 32        When Giggs argued that it was an abuse not to renew for "a failure to get in your paperwork for the first time," the court noted that it was the fourth time that Giggs had missed a deadline. In response, Giggs argued that it was not four times because it was "all of a piece of one application."

¶ 33        The assistant attorney general spoke briefly and argued that "[t]he lack of the certificate of occupancy wasn't like a straw that broke the camel's back or the dispositive factor." The attorney for Harvey stressed that, "from [his] client's perspective," this is not about Giggs "but about all of the liquor licensees in our town."

¶ 34        At the end of the hearing, the trial court observed that "there is no dispute as to the facts and the timeline as to what was actually produced when." The trial court noted that "Harvey has the right to enforce [its] laws." The trial court stated that it could not find an abuse of discretion particularly where Harvey made available to Giggs presubmission services that Giggs declined to take advantage of. In the end, the trial court upheld the State Liquor Commission's decision affirming the Harvey order.

¶ 35        A short written order entered on October 26, 2022, stated that the trial court affirmed the State Liquor Commission decision "[f]or the reasons stated in the record" and that the court lifted the prior stay, effective Friday, October 28, 2022. The order further stated: "This Order constitutes a final judgment for purposes of Illinois Supreme Court Rule 303," which permits appeals from final judgments in civil cases. Ill. S. Ct. R. 303 (eff. July 1, 2017). On November 4, 2022, Giggs filed a notice of appeal, and this timely appeal followed. On November 21, 2022, this court denied Giggs's "Emergency Motion to Permit Plaintiff-Appellant to Resume its Sale of Liquor During the Pendency of this Appeal."

¶ 36                                ANALYSIS

¶ 37                     I. Standard of Review: Two Layers

¶ 38        "When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision." *Walker v. Dart*, 2015 IL App (1st) 140087, ¶ 34. "As a court of review, we

are limited to considering the evidence submitted in the administrative hearing." *Walker*, 2015 IL App (1st) 140087, ¶ 35. The burden of proof in an administrative proceeding is on the plaintiff in the proceeding who, in our case, was Giggs. *Walker*, 2015 IL App (1st) 140087, ¶ 35. Thus, on this appeal, we are reviewing the decision of, and the record before, the State Liquor Commission.

¶ 39        Nonetheless, there are two layers with respect to our standard of review. *Koehler*, 405 Ill. App. 3d at 1080. While we are reviewing the State Liquor Commission, the State Liquor Commission, in turn, was reviewing the decision of the local commission, which in this case was the Harvey order. Thus, our standard of review must take into account both the level of deference that we owe the State Liquor Commission and the level of deference that the State Liquor Commission owed to the local commission. *Koehler*, 405 Ill. App. 3d at 1080.

¶ 40                        A. First Layer: Abuse of Discretion

¶ 41        The governing statute is section 7-9 of the Liquor Control Act of 1934 (Act). 235 ILCS 5/7-9 (West 2020). Regarding standard of review, this section states that the State Liquor Commission "*shall review the propriety* of the order or action of the local liquor control commissioner." (Emphasis added.) 235 ILCS 5/7-9 (West 2020). For decades now, courts have interpreted the highlighted words to mean that the State Liquor Commission reviews the local decision only for an abuse of discretion. *Koehler*, 405 Ill. App. 3d at 1080; *Kessell v. Illinois Liquor Control Comm'n*, 56 Ill. App. 3d 485, 490 (1978); see *Daley*, 321 Ill. App. 3d at 77 (standard of review regarding sanctions imposed by a local liquor commission is whether it abused its discretion and acted unreasonably or arbitrarily).

¶ 42                        B. Second Layer: Clearly Erroneous

¶ 43    In the case at bar, as in *Koehler*, 405 Ill. App. 3d at 1079, "[t]here are no disputes here regarding the historical facts or the law," and "there are no factual disputes regarding the underlying events or the proceedings." There is also no dispute that Giggs's actions permitted Harvey to impose sanctions. Thus, the question presented here is a mixed question of law and fact, namely whether, under these facts, the State Liquor Commission complied with section 7-9's requirement to determine whether the order not to renew was sufficiently supported by the order's factual findings. *Koehler*, 405 Ill. App. 3d at 1079; 235 ILCS 5/7-9(b) (West 2020). Accordingly, we review the State Liquor Commission decision under the clearly erroneous standard. *Koehler*, 405 Ill. App. 3d at 1079.

¶ 44    " 'Clearly erroneous' " denotes an intermediate level of deference that is between *de novo* review and manifest weight review. *Koehler*, 405 Ill. App. 3d at 1079. It "means that the agency's decision will be reversed only where the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Koehler*, 405 Ill. App. 3d at 1079. Thus, in the case at bar, to reverse, we would have to find that the State Liquor Commission was clearly erroneous in finding that the Harvey order was not an abuse of discretion. In other words, we would have to find both that the Harvey order was an abuse of discretion and that the State Liquor Commission was clearly erroneous in not so finding. For the reasons explained below, we can find neither.

¶ 45                            II. The Three Questions

¶ 46    Section 7-9 of the Act states that, when reviewing the propriety of the local liquor commission's order, the State Liquor Commission "shall" consider the following three questions:

"(a) whether the local liquor control commissioner has proceeded in the manner provided by law;

(b) whether the order is supported by the findings;

(c) whether the findings are supported by substantial evidence in the light of the whole record." 235 ILCS 5/7-9 (West 2020).

¶ 47    As was already discussed in the background section of this opinion, only one of these three questions is at issue here. Regarding the first or due process question, Giggs does not contest either that it received notice of the proceedings or that the proceedings were conducted in the manner provided by law. In the case at bar, Giggs was notified of the initial hearing via three means: regular mail, UPS next day delivery, and e-mail to counsel. The proceedings were then rescheduled twice at Giggs's request: once from the initial hearing date of November 13 to December 2, and again from December 2 to December 17. In addition, Giggs was represented by counsel at each proceeding, before both the local and state commissions.

¶ 48    Regarding the third question, about whether the factual findings were supported by the evidence, Giggs does not contest the timeline set forth in the underlying orders, namely

(a) that, on August 6, 2020, Giggs received a liquor license renewal packet,

(b) that, on or before September 1, 2020, it could have submitted a preliminary application for early review, an option that it chose not to exercise,

(c) that October 2, 2020, was the deadline for submission,

(d) that, as of October 2, 2020, its application was incomplete, in that it lacked (1) its articles of incorporation, (2) its sales and use tax forms and surcharge return forms for November 2019 through the current date, (3) its drink excise tax return forms for the 2019-20 license year showing payment, (4) a certificate of insurance reflecting

workers' compensation coverage, and (5) a certificate of occupancy for the licensed premises,

(e) that, on November 13, 2020, a hearing notice was sent by regular mail, UPS next day delivery and e-mail, notifying Giggs of the "Intent to Not Renew,"

(f) that the November 13 hearing was rescheduled to December 2, 2020, at Giggs's request,

(g) that, on the morning of the December 2 hearing, Giggs filed item (4) above, which was the certificate of liability insurance, and a portion of item (2), which were the sales and use tax forms for 2019, but not the ones for 2020,

(h) that at the December 2, 2020, hearing Giggs again requested a continuance and the hearing was rescheduled a second time to December 17,

(i) that, on December 16, the day before the hearing, Giggs provided a portion of item (3) above, which were drink excise tax return forms for November 2019 through November 2020, but not the payments,

(j) that, at the close of the hearing on December 17, Giggs tendered payment but still did not submit any sales and use tax forms for 2020 (part of item (2) above) or its articles of incorporation (item (1) above) or its certificate of occupancy (item (5) above),

(k) that, at the December 17 hearing, Giggs explained that it had been unsuccessful in its attempts to obtain the occupancy certificate from its international landlord and

13

(l) that, on December 18, 2020, Giggs provided its articles of incorporation (item (1) above) and its sales and use tax forms for 2020 (part of item (2) above). [1]

¶ 49     This recitation leads us to the second question, which is whether the factual findings above justify the order. 235 ILCS 5/7-9 (West 2020) ("(b) whether the order is supported by the findings"). In its brief to this court, Giggs frames the issue before us as "what actions" should have been taken "in light of those facts." We turn to that question in the section below.

¶ 50                    III. Whether the Order Is Supported by Its Findings

¶ 51     In its brief to us, Giggs argues that the sanction was too harsh. Even if a sanction is technically justified, a reviewing court may overturn a sanction that is "overly harsh in view of mitigating circumstances." *Jacquelyn's Lounge*, 277 Ill. App. 3d at 966.

> "The issue is not whether the reviewing court would decide upon a more lenient penalty were it initially to determine the appropriate discipline, but rather, in view of the circumstances, whether this court can say that the commission, in opting for a particular penalty, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the commission or statute." *Jacquelyn's Lounge*, 277 Ill. App. 3d at 966.

¶ 52     In its brief to us, Giggs argues that the revocation decision was based in part on the "ultimate inability" of Giggs to provide a certificate of occupancy. With that argument, Giggs appears to misunderstand the decision below. It was not one missed document that led to this decision but rather the repeated flouting of deadlines by Giggs and repeated failure to submit a number of documents, as well as payment, even when the submission was entirely within

---

[1]In its brief to this court, Giggs states that there is "no serious dispute about what the operative facts in this case are." As a result, Giggs concedes that this court "need not decide" whether "the factual findings" as stated in either the order of the State Liquor Commission or the Harvey order "were against the manifest weight of the evidence."

Giggs's own control—such as the sales and use tax forms that were not submitted until after the December 17 hearing.

¶ 53      Giggs argues that the refusal to renew was an abuse of discretion where it was "for a first time failure to have its paperwork into the City on time." This argument has the same flaw as the prior argument. It was the repeated failure to make deadlines that was at issue. Taking one document as an example, we note that Giggs missed four deadlines to submit its articles of incorporation, which were in its possession from the beginning: (1) the October 2 drop-dead deadline, (2) the originally scheduled November 20 hearing; (3) the December 2 hearing, which had been rescheduled at Giggs's request; and (4) the December 17 hearing, which had been rescheduled a second time at Giggs's request. If the entire liquor licensing apparatus were being run just for Giggs and for Giggs alone, Giggs might have a point, but Harvey has the right to set deadlines to enable the smooth running of a process designed to handle all its licensees and their applications.

¶ 54      In addition to its failure to provide documentation by deadlines, Giggs also failed to pay its taxes on time. "It is well established that the violation of any statute, ordinance, or regulation related fairly to the control of liquor" qualifies as cause for the revocation of a liquor license. *Jacquelyn's Lounge*, 277 Ill. App. 3d at 966; *Daley*, 321 Ill. App. 3d at 77 ("The violation of any statute, ordinance or regulation related to the control of liquor generally constitutes cause for the revocation of a liquor license."); *Hanson v. Illinois Liquor Control Comm'n*, 201 Ill. App. 3d 974, 983 (1990).

¶ 55      Giggs asks us to consider the factual examples found in *Jacquelyn's Lounge*, 277 Ill. App. 3d at 966-67 and *Hanson*, 201 Ill. App. 3d at 983. In *Jacquelyn's Lounge*, the appellate court found that the sanction of revoking the establishment's liquor license was "unduly

15

harsh," where there was no evidence that the establishment's owners had prior personal knowledge of the violation that led to the revocation and where there was no evidence of a history of this type of violation. *Jacquelyn's Lounge*, 277 Ill. App. 3d at 966-67. Similarly, in *Hanson*, the appellate court found that the sanction was unduly harsh, "under the unique circumstances present here," where there was no evidence that the establishment's owners had any knowledge of the violation and where the establishment had never been cited for violations of any type during its five-plus years of existence. *Hanson*, 201 Ill. App. 3d at 983-84. In both cases, the violations were cocaine sales by bartenders. Giggs argues that, if the sanction of revocation was too harsh when the violations were the far more serious sale of illegal drugs on tavern premises, then it was definitely too harsh when the violations involved the mere submission of documents and taxes.

¶ 56         Unfortunately for Giggs, these cases are inapposite. In those cases, the owners were unaware of the violation; in contrast, here, the owners were well aware of their own failure to submit taxes and forms. In those cases, the issue concerned when owners should be held responsible for actions undertaken by their agents or employees without their knowledge.[2] By contrast, in the case at bar, the issue concerns when owners should be held responsible for their own repeated actions or failures to act.

¶ 57         On this appeal, Giggs attempts to excuse its inaction by arguing that the licensing process in Harvey changed. Giggs argues that, in Harvey, "the licensing process was well-nigh nonexistent" prior to the election of its current mayor in 2019; that Harvey's prior practice, with which all licensees were familiar, was one of general acceptance of late submissions; and

---

[2]In its brief to this court, Giggs "acknowledges that this Court based its decisions in those cases, in part, because the licensees were unaware of the offenses being committed on their premises."

that, in 2020, Harvey implemented a new policy. Insofar as this was a new policy, it was announced in bold and underlined in the mayor's letter to all licensees, and Giggs does not argue that it was ignorant of the change.

¶ 58    The bottom line is that the owner in our case did not take these deadlines seriously, time and again, despite the boldface and underlined warning from the mayor and multiple extensions of beneficence by Harvey. We cannot say that the State Liquor Commission was clearly erroneous in finding that, after months of patience by Harvey and piecemeal defiance by the establishment, Harvey abused its discretion by nonrenewal.

¶ 59    Giggs argues that "there was no evidence presented *** that any other liquor licensee suffered the same consequences" that Giggs did. However, there is also no evidence that other licensees in Harvey failed to comply or that Harvey treated plaintiff differently from any other bar or store owner in Harvey. See *Walker*, 2015 IL App (1st) 140087, ¶ 35 (the burden of proof in an administrative proceeding is on the plaintiff in the proceeding).

¶ 60                                        CONCLUSION

¶ 61    We cannot find that the State Liquor Commission was clearly erroneous in finding that Harvey abused its discretion by not renewing Giggs's liquor license, where a cover letter announced a deadline in bold after which submissions would not be accepted where the letter and packet were sent well in advance of the deadline; where Harvey offered Giggs an opportunity to submit a preliminary application for early review and Giggs declined this opportunity; where Harvey specified what documents were needed; where a subsequent hearing notice stated Harvey's intent not to renew, thereby underscoring what was at stake here; where this notice was sent by three different means and received promptly; where Giggs, despite being warned of Harvey's intent not to renew, still submitted documents and taxes in

a piecemeal fashion; where Harvey granted repeated continuances at Giggs's request, thus giving this licensee a couple of extra months to comply; where Giggs failed to pay its taxes in a timely fashion; and where there is no evidence or allegation that Harvey treated Giggs differently from any other store or bar owner in Harvey. For all the foregoing reasons, we affirm.

¶ 62          Circuit court judgment affirmed.

¶ 63          Commission decision affirmed.

*Giggs Bajwa Corp. v. Berg*, 2024 IL App (1st) 221691

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-881; the Hon. Anna Helen Demacopoulos, Judge, presiding. |
| **Attorneys for Appellant:** | Glenn Seiden and Mark A. Cisek, of Seiden Law Group, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Caleb Rush, Assistant Attorney General, of counsel), for appellees Cynthia Berg and the Illinois Liquor Commission.<br><br>Mark R. Heinle, of Ancel Glink, P.C., of Naperville, for other appellees. |