# Illinois Official Reports

## Appellate Court

---

### *Walker v. Dart*, 2015 IL App (1st) 140087

---

| | |
|---|---|
| Appellate Court Caption | MISTER WALKER, Plaintiff-Appellant, v. THOMAS J. DART, Sheriff of Cook County, and THE COOK COUNTY SHERIFF'S MERIT BOARD, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-0087 |
| Filed | March 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-45227; the Hon. Sophia Hall, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Cass T. Casper and Christina L. Adams, both of Teamsters Local 700 Legal Department, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Daniel F. Gallager, James C. Pullos, and Nile N. Miller, Assistant State's Attorneys, of counsel), for appellees. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1 Plaintiff Mister Walker appeals from the circuit court's order affirming the administrative decision of defendants, the Cook County Sheriff's Merit Board (Merit Board) and Thomas J. Dart, Cook County sheriff (Sheriff), which found that plaintiff violated certain portions of the Sheriff's Drug Free Work Place Policy (drug policy) and warranted plaintiff's employment to be terminated.

¶ 2 An investigation was opened after plaintiff's random urine screening tested positive for oxazepam. During the investigation, plaintiff provided multiple prescription bottles, including ones from 1995 and 2000, one of which included a medication that would yield a positive result for oxazepam. After a complaint was filed against plaintiff, the Merit Board conducted a hearing, concluding that the prescriptions were not valid prescriptions because of their age and plaintiff's use of the medications constituted an abuse of a prescribed drug in violation of the drug policy.

¶ 3 On appeal, plaintiff argues that the decision of the Merit Board was against the manifest weight of the evidence because (1) there was insufficient evidence presented to show that plaintiff abused prescription medication; (2) no law or written rule prohibits the possession or use of legally prescribed medication after a certain period of time; (3) the drug policy is unconstitutionally vague; and (4) the allegations are not sufficient for discharge.

¶ 4 Plaintiff, who was born March 17, 1939, was employed as a Cook County deputy sheriff for approximately 32 years beginning in October 1980. Plaintiff also served 14 months in Vietnam for which he was awarded a Purple Heart and a Bronze Star. In April 2011, he was assigned to night bond court at the Criminal Courts Building.[1] On April 14, 2011, plaintiff was randomly selected by a computer to submit a urine sample for drug testing. Plaintiff's sample tested positive for oxazepam, which is a benzodiazepine and is a controlled substance under schedule IV of the Illinois Controlled Substances Act (720 ILCS 570/210(c)(18) (West 2010)). Following the positive result, an investigation was opened and a complaint was filed. The following evidence was presented at the hearing on that complaint before the Merit Board.

¶ 5 Investigator Sheryl Collins testified that she had been an investigator with the Sheriff's Office of Professional Review (OPR) for nine years. She received a notification regarding the positive result from plaintiff's sample. Collins conducted an interview with plaintiff on May 23, 2011. Also present at the interview were Deputy Sheriff James Williams, plaintiff's union representative, and Investigator Henry Hemphill, another member of the Sheriff's OPR.

---

[1]Testimony was taken prior to the Criminal Courts Building being renamed The Honorable George N. Leighton Criminal Courts Building.

¶ 6        Collins testified that plaintiff told her that he had taken a "small portion" of prescription medication lorazepam the previous evening to help him sleep. Collins stated that plaintiff brought in several prescription bottles, but she did not review all the labels on them. She noted a prescription bottle for lorazepam dated from 1995, from which she said plaintiff indicated he had taken the pill. Collins stated that in her opinion that was not a current prescription. Plaintiff told her that the medication had been prescribed by a doctor who was now deceased. She said she told plaintiff to go to the veteran's administration hospital to see if it could assist him. She left the investigation open for approximately three months for plaintiff to bring her additional information.

¶ 7        Collins' investigation was closed when plaintiff "failed to return to our office with a legal prescription demonstrating that he had a reason to be in possession of that controlled substance at the time of testing." She prepared a written statement from the interview and plaintiff initialed the statement. She stated that plaintiff's 1995 prescription was not a valid prescription at the time of testing and was in violation of the drug policy.

¶ 8        On cross-examination, Collins was asked if there was a written requirement that the prescription be current, she responded, "That is the order of the Drug Testing Unit. I've not seen that in print, but that is the order of the Sheriff's Drug Testing Unit." Collins admitted that, to her knowledge, she has not seen this as a written policy. A commissioner on the Merit Board asked Collins if she was aware of a written policy where a "current prescription is defined by the Drug Testing Unit," Collins answered that she had not seen one. When asked if the drug policy "anywhere state[d] anything about current prescriptions," Collins essentially said this document does not contain "the word 'current.' " Collins also confirmed that the drug policy does not indicate that "taking a pill out of an older prescription bottle is a violation of that general order." Collins also testified that her written report stated that plaintiff had been legally prescribed the medication in 1995. She stated that the report also showed that plaintiff had no prior disciplinary history.

¶ 9        On redirect, Collins testified it is not a violation of the drug policy to possess or ingest drugs or controlled substances pursuant to a valid prescription. When she was asked whether the policy implied that drugs used pursuant to an invalid prescription would fall under the prohibited drugs, she said yes. In her opinion, a 1995 prescription was not valid when plaintiff used it in 2011. On recross, Collins stated that she did not know if the Illinois Controlled Substances Act imposed any time limitations on how long a prescription is valid. She stated that she received direction from the drug testing unit that a prescription is valid for one year.

¶ 10       Peggyann Hynes testified that she was employed as the director of the sheriff's drug testing unit. She explained the random drug testing procedures used by the unit, including how plaintiff was selected and how the sample was collected. Once collected, the sample is sent to Pharmatech Laboratories, which has a contract with the sheriff's office, for testing. Hynes received a positive notification regarding plaintiff's sample from Pharmatech and forwarded the notification to OPR for further investigation. During the OPR investigation, if the employee provides a valid prescription to explain the positive result, then that information is sent to Hynes, who forwards it to Pharmatech for confirmation that the prescription would yield a positive result. If Pharmatech confirms that the prescription would cause a positive result, no case is filed with the Merit Board. Hynes testified that in this case, she never received a notification from OPR regarding plaintiff's positive test resulting from a prescription. Hynes

said that unless OPR forwarded her prescription information, she would be unaware that an employee had a prescription.

¶ 11    Hynes stated that she was "under the impression that a prescription is good for a year after it's filled. After 17 years, [she] would not say that was a valid prescription." On cross-examination, Hynes was asked what was the basis of that impression. Hynes responded that the source was her prescription bottles. She admitted she never saw plaintiff's prescription bottles. Hynes admitted that she had no knowledge of a limitation of a time period that prescriptions are valid under the Illinois Controlled Substances Act, federal law, or local city or county regulations or ordinances. Hynes also confirmed that the drug policy does not prohibit the taking of prescription drugs after a certain period of time and there are no other policies governing the use of drugs.

¶ 12    Justin Pham and Kevin Kodama testified via telephone as expert witnesses. Pham was employed as a certifying scientist at Pharmatech and Kodama was employed as the laboratory manager at Pharmatech. Pham tested plaintiff's urine sample, which yielded a positive result for oxazepam. Pham testified that lorazepam would not test positive for oxazepam, but testified that diazepam would result in a positive test for oxazepam.

¶ 13    Kodama testified about the laboratory and explained that the drug oxazepam was part of the benzodiazepine drug class, which also includes lorazepam and diazepam. He explained that the benzodiazepine drug class is "typically prescribed for anti-anxiety or [as] a sedative *** . And this is a prescribed medication, any benzodiazepine drug is a prescribed medication, so anyone taking that particular medication has to be under doctor's care."

¶ 14    Plaintiff testified at the hearing that he was employed by the sheriff for 32 years, starting in October 1980. He was assigned to the Criminal Courts Building at 26th and California for 10 years prior to his termination.

¶ 15    Plaintiff stated that he served in the Vietnam War and was exposed to Agent Orange. He suffered from medical conditions stemming from that exposure and has taken lorazepam and diazepam by prescription at various times to help him sleep and for anxiety as needed.

¶ 16    Plaintiff testified that after the April 2011 positive test, he explained to Collins that he was taking lorazepam and diazepam by taking one-quarter of a tablet occasionally before bed to help his nerves. He stated that he took diazepam the night before the drug test. He said he was under the care of Dr. Amin in April 2011.

¶ 17    He also stated that he brought five prescription bottles to the interview with Collins, two bottles of diazepam and three bottles of lorazepam. He testified that Collins only reviewed two of the bottles he brought. Plaintiff testified that none of the bottles had an expiration date and the bottle indicated for the pills to be taken "as needed." He received a new prescription for lorazepam in May 2011 from his doctor. Plaintiff said he was unable to get a prescription for diazepam at that time because the doctor had switched to "something else." Plaintiff stated that he tested positive for benzodiazepine in a prior drug test in 1995 and he brought his pharmacy printout indicating his medications and a note from his previous physician, now deceased. He also had a positive drug test for benzodiazepine in 1997 and he testified that he brought the "medicine [he] was taking" and a note from the same physician. From our review of the record, no disciplinary action occurred as a result of the prior drug tests.

¶ 18    On cross-examination, plaintiff testified that he told Collins he took diazepam the night before his urine test. He admitted that one of the lorazepam prescription bottles he brought was

from August 1995. Plaintiff also admitted that one of the diazepam prescription bottles was from March 2000. A commissioner noted that this prescription bottle indicated "3 refills by 6/30/2000."

¶ 19 Plaintiff stated that he reviewed the statement Collins prepared and initialed it, but did not add anything to the statement. Plaintiff testified that during the interview the second investigator, Hemphill, continually interrupted plaintiff when he responded to questions and threatened to arrest plaintiff for possession of a controlled substance. Hemphill also was present when plaintiff reviewed the statement and continued to make threats at that time.

¶ 20 Officer James Williams testified that he was employed as a deputy sheriff with the Cook County Sheriff. Williams was currently assigned to the Criminal Courts Building and had been at that location for 13 years. He had known plaintiff as one of his colleagues for the 13 years he had been at that location. Williams attended plaintiff's OPR interview in May 2011 as plaintiff's union representative.

¶ 21 Williams stated that plaintiff brought between two and five prescription bottles to the interview and the bottles were on the table in front of plaintiff during the interview. Williams testified that Collins did not examine all of the prescription bottles, she reviewed two of the bottles and there were other bottles she did not examine. He could not recall what drug plaintiff indicated to Collins that he took; he could only remember that it ended in "pam."

¶ 22 Williams also testified that at the May 2011 interview, one of the investigators acted in a manner that may have intimidated plaintiff. He said that "every time Investigator Collins would try to make an inquiry regarding Mister Walker's prescription, as he would go to try to explain, Investigator [Hemphill[2]] would cut him off and on several occasions he even threatened to arrest him." Williams further explained that Hemphill "stated that with [plaintiff's] prescriptions being outdated he could arrest him for possession of a controlled substance." Williams said that the investigator did not cite any authority when making these statements. Williams stated that Hemphill did not pick up and observe plaintiff's prescription bottles or make any notations. Williams testified that Hemphill threatened to arrest plaintiff on three different occasions. Williams described the interview as follows:

"As Mister Walker was trying to explain to Investigator Collins about his prescriptions, Investigator [Hemphill] would cut in and start asking him questions about medications. And as Mister Walker would try to explain then [*sic*] to Investigator [Hemphill] about the medications, he would cut him off and tell him, you know, [t]his is possession of a controlled substance, I can arrest you for this. And that's when I interrupted Investigator [Hemphill], being Mister Walker's union steward, with that line of questioning, and Investigator [Hemphill], after the third time, told Mister Walker he needs to get rid of the medication as soon as he leaves OPR."

¶ 23 Williams also testified that he worked with plaintiff at the Criminal Courts Building on a daily basis. Williams was assigned to a courtroom and plaintiff worked with the transport team. Williams offered his opinion on plaintiff's work ethic.

"He's a very hard worker. He extends himself to help other people out. And every time you see him, you know, he's asking, you know, Do you need help with this? I'll come back and pick these guys up, have them ready, etc., etc. But he's–he has a very

---

[2]Williams referred to Investigator Hemphill as "Humphries" during his testimony, we will refer to the second investigator as Hemphill, consistent with Collins' testimony.

strong work ethic, one of the strongest ones that I have encountered since I've been in that building for 13 years."

¶ 24    Williams also testified that in his opinion, plaintiff has never been under the influence of drugs or alcohol. He stated that he has training to determine when an individual is under the influence of drugs or alcohol and he frequently encountered detainees that are under the influence of drugs or alcohol when he worked at the central bond court.

¶ 25    Officer John Figueroa testified that he was employed with the Cook County sheriff's department and was currently the chief union steward. He previously worked at the Criminal Courts Building for 20 years.

¶ 26    As the chief union steward, Figueroa processed all grievances, including those related to discipline. Figueroa testified that he was unaware of any express rule in the sheriff's office that prohibits taking a prescription after the expiration of a certain period of time. He answered that the general order regarding drug testing does not state that deputy sheriffs cannot take prescription drugs after a certain period of time.

¶ 27    When Figueroa worked in the Criminal Courts Building, he worked with plaintiff on a regular basis. He stated that plaintiff had a good work ethic. Figueroa did not recall encountering a disciplinary grievance against plaintiff while he had been chief union steward.

¶ 28    Plaintiff also presented two character witnesses at the hearing. Officer Christopher Jatis testified that he worked with plaintiff for 15 to 16 years at the Criminal Courts Building. He "never smelled alcohol on his breath and [he] never [saw plaintiff] acting erratically as someone being on narcotics or something." In his opinion, plaintiff was "always there side by side with [him] willing to work, very seldom calls off, goes beyond the scope of his job, willing to help others out and bring up prisoners. Yes, he does a really good job, you know." Jatis was unaware of any complaints from the public or an inmate against plaintiff or of any disciplinary actions against plaintiff.

¶ 29    Officer Bassam Akel also testified that he was employed as a Cook County deputy sheriff. He stated that he had worked with plaintiff since 1993. He said he had never observed plaintiff to be under the influence of drugs or alcohol. In his opinion, plaintiff has "got great work ethic. He's actually got a tremendous character. He's a very motivated worker." Akel also testified that plaintiff was "never" late and he could not remember the last time plaintiff called off. He was unaware of any complaints from the public or an inmate or of any discipline against plaintiff.

¶ 30    In December 2012, the Merit Board issued its decision terminating plaintiff's employment in violation of the drug policy. In its findings, the Merit Board stated as follows.

> "The Board finds that the possession of and ingestion of medications as testified to by the Respondent is an abuse of a prescribed drug and a violation of the Sheriff's Drug Free Work Place Policy. Additionally, the Board finds that prescriptions written well over twelve years ago and seventeen years ago, respectively, do not constitute valid prescriptions for controlled substances.
>
> Additionally, the Board finds the testimony of Respondent regarding what he told Investigator Collins during his interview to not be credible. The Board finds it unlikely that the Respondent told Investigator Collins that he had taken Diazepam and that she did not record that in her report. In fact, Investigator Collins testified that she allowed the Respondent some three months to contact the Veteran's Administration, where the

Respondent had received his earlier medication, in an attempt to obtain a valid prescription. The Respondent took no action with regard to the Veteran's Administration.

The Board finds that the Sheriff has sustained its burden of proof in this matter."

¶ 31    In December 2012, plaintiff filed a complaint for administrative review in the trial court. Following briefing and arguments, the trial court affirmed the Merit Board's decision, finding that the Merit Board's decision was not against the manifest weight of the evidence.

¶ 32    This appeal followed.

¶ 33    Plaintiff argues that the Merit Board's decision was clearly erroneous because the drug policy does not state that employees are prohibited from taking validly obtained prescription drugs after a certain period of time has elapsed since the prescription was filled.

¶ 34    When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). The Administrative Review Law provides that judicial review of an administrative agency decision shall extend to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2010). Further, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2010).

¶ 35    As a court of review, we are limited to considering the evidence submitted in the administrative hearing. *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 66. "[T]he burden of proof in an administrative proceeding lies with the plaintiff in the proceeding, here the Sheriff." *Id.* A deputy sheriff may not be "removed, demoted or suspended except for cause, upon written charges filed with the [Merit] Board by the Sheriff and a hearing before the Board thereon," where the deputy sheriff has the right to present evidence and argument. 55 ILCS 5/3-7012 (West 2010). "If the charges against an accused deputy sheriff are established by a preponderance of evidence, the Board shall make a finding of guilty and order either removal, demotion, suspension for a period of not more than 180 days, or such other disciplinary punishment as may be prescribed by the rules and regulations of the Board which, in the opinion of the members thereof, the offense merits." *Id.*

¶ 36    "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). "Rulings on questions of fact will be reversed only if against the manifest weight of the evidence." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the *de novo* standard, and as such, it grants some deference to the agency's decision. *AFM Messenger*, 198 Ill. 2d at 392. "[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 37    "The findings of the administrative agency, however, must rest upon competent evidence and be supported by substantial proof, and an agency may not consider a matter that is not in the record." *Gumma v. White*, 345 Ill. App. 3d 610, 615 (2003). "If there is any competent evidence supporting the agency's determination, it should be affirmed." *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 49. However, " '[e]ven under the manifest weight standard applicable in this instance, the deference we afford the administrative agency's decision is not boundless.' " *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 465 (2009) (quoting *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007)). "When reviewing an administrative agency's decision, we may put aside any findings which are clearly against the manifest weight of the evidence." *Id.*

> " '[O]ur review cannot amount to a rubber stamp of the proceedings below merely because the Board heard witnesses, reviewed records, and made the requisite findings. [Citations.] Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight.' " *Roman*, 2014 IL App (1st) 123308, ¶ 68 (quoting *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211-12 (2006)).

¶ 38    We also recognize that:

> "In discussing opinion testimony by lay witnesses, it has been observed:
>
> > 'If the basis of the opinion includes so many varying or uncertain factors that the lay witness is required to guess or surmise in order to reach an opinion, the opinion is objectionable as speculation or conjecture.' " *Rose v. Mercedes-Benz U.S.A., LLC*, 378 Ill. App. 3d 615, 625 (2007) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 701.1, at 597 (7th ed. 1999)).

¶ 39    "Our scope of review of an administrative agency's decision to discharge an employee is a two-step process." *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009) (citing *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983)). "The first step in our analysis is to determine whether the agency's findings of fact are contrary to the manifest weight of the evidence." *Id.* (citing *Walsh*, 96 Ill. 2d at 105). "The second step in our analysis is to determine if the Board's findings of fact provide a sufficient basis for its conclusion that cause for discharge exists." *Id.* (citing *Walsh*, 96 Ill. 2d at 105).

¶ 40    Following the hearing, the Merit Board found that plaintiff violated three general orders, Nos. 1002.2, 3401.1, and 3406, of the court services department of the Cook County sheriff and a rule, article X, paragraph B, of the Merit Board because plaintiff's possession and ingestion of medications was an abuse of a prescribed drug and that prescriptions written over 12 and 15 years ago did not constitute valid prescriptions for controlled substances. The Merit Board also found that plaintiff's testimony that he took diazepam and informed Collins of this information was not credible.

¶ 41    The sheriff's drug policy is set forth under general order No. 1002.2. General order No. 1002.2 states:

> "The unlawful involvement with drugs; the presence in an employee's system, of drugs or controlled substances, or their metabolites; the use of cannabis or non-prescribed

controlled substances; or the abuse of legally prescribed drugs or controlled substances by sworn personnel, at any time, while on or off-duty are strictly prohibited."

¶ 42      Section II(E) of Appendix A to the drug policy states, in relevant part:

"This policy does not apply to the use of controlled substances within the limits of a medically valid prescription except where such use is found to be an excessive or abusive use of prescribed controlled substances."

¶ 43      General order No. 3401.1 details the responsibility of all sworn officers to obey the United States and Illinois Constitutions, all federal, state, and local laws as well as decisions of the court. Subsection (K)(1) of general order No. 3401.1 details the use of controlled substances.

"Members will not possess or use cannabis or any controlled substances except when prescribed by law and department directives or by a physician or dentist. When controlled substances are prescribed or other medication is being used, members will notify their superior officer if the use may affect their job performance."

¶ 44      General order No. 3406 sets forth the code of ethics and section IV states that the failure to abide by the conditions and standards set forth is considered a violation and may result in disciplinary action. Article X, paragraph B of the rules and regulations of the Cook County Sheriff's Merit Board provides, in relevant part, that no deputy of the Cook County sheriff's court services department will violate any law or statute of the state or of the United States of America, violate any ordinance of a county or municipal government, or violate "any of the General Orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office."

¶ 45      Defendants contend that the drug policy can be violated in three ways: (1) the presence in an employee's system of drugs or controlled substances or their metabolites; (2) the use of non-prescribed controlled substances; and (3) the abuse of legally prescribed drugs or controlled substances. Plaintiff argues that the Merit Board's decision that he abused legally prescribed controlled substances is against the manifest weight of the evidence because neither the drug policy nor any of cited general orders prohibit the use of one's own prescription after a certain period of time and the sheriff's department failed to notify defendant of its definition of abuse. Plaintiff also contends that the policy prohibits "the abuse of legally prescribed substances," but fails to define what would constitute "abuse" under the drug policy. Defendants ask this court to uphold the Merit Board's decision based upon all three provisions detailed above.

¶ 46      We begin by pointing out that the Merit Board's decision was based on a finding that plaintiff's use of medications was "an abuse of a prescribed drug and a violation of the Sheriff's Drug Free Work Place Policy." More specifically, the Merit Board found that plaintiff's prescriptions from 1995 and 2000 did not constitute valid prescriptions for controlled substances and that the possession and use of those medications was an abuse of a prescription. The decision, however, did not provide any other basis which established a violation of the drug policy. Since there was no testimony directed at the other two provisions of the drug policy and the Merit Board made no such finding, we will limit our review to whether the Merit Board's decision that plaintiff abused a prescribed drug was against the manifest weight of the evidence.

¶ 47      In reviewing the general orders and rules at issue, it is apparent that none of these general orders or rules details at what point a legally obtained prescription becomes invalid. Neither

party has cited to any statute, ordinance, or rule that provides a time frame in which a legal prescription becomes invalid and that continued use is an abuse of a prescription.

¶ 48    Defendants cite to section 312(a) of the Illinois Controlled Substances Act as authority for the proposition that use of a prescription after six months is invalid. However, that section is directed at pharmacists and the filling of a prescription. Section 312(a), in relevant part, provides that "[a] written prescription for Schedule III, IV or V controlled substances shall not be filled or refilled more than six months after the date thereof." 720 ILCS 570/312(a) (West 2010). This statute does not contain any language restricting the use of a legally filled prescription. The statute only mandates that a written prescription cannot be filled by a pharmacist more than six months after it has been issued. Therefore, we find this provision does not support the Merit Board's conclusion that plaintiff's conduct was an abuse of a prescription medication because plaintiff took a pill from a prescription bottle that could not be refilled.

¶ 49    We next consider whether the evidence presented at the hearing supports the Merit Board's finding that plaintiff's use of his prescription medication constituted an abuse of a prescription medication. Collins and Hynes offered testimony suggesting that the 1995 and 2000 prescriptions were invalid, but neither recalled seeing a written policy detailing this suggestion. Collins admitted that policy did not include the word "current" and she had not seen a written policy stating that taking a pill from an older prescription bottle is a violation of the drug policy. Hynes testified that she believed prescriptions were valid for one year based upon her review of her own prescriptions. Further, she admitted that the drug policy did not have an express prohibition on taking prescriptions after a certain period of time. This type of testimony is not competent evidence of the existence of a policy that prescriptions older than one year are invalid under the drug policy. Moreover, section II(E) of appendix A to the drug policy provides that the policy "does not apply to the use of controlled substances within the limits of a medically valid prescription except where such use is found to be *** abusive." Therefore, under the Sheriff's current policy, the Sheriff cannot terminate employees for violations of an unwritten policy created by employees who have no expertise whatsoever in the area of abuse of prescription medications and who testify that the policy came from their review of their own prescription bottles.

¶ 50    We also question whether either of the witnesses who testified for the Sheriff were qualified to give an opinion on what abuse of a prescription medication is because neither witness had any background or experience in the area of abuse of prescription medication. There was no medical testimony whatsoever to establish that taking a pill from an older prescription bottle was not within the limits of "a medically valid prescription" or that plaintiff's conduct was an abuse of prescription medication. Further, there was no evidence to contradict plaintiff's testimony that the amount he took the night before the test was not abusive or excessive or that it was being taken for any purpose other than that for which it was prescribed. In fact, the testimony at the hearing was uncontradicted that plaintiff was prescribed the two types of medication for anxiety and for difficulty sleeping on an "as needed" basis.

¶ 51    "The reviewing court gives great deference to an agency's interpretation of its own rules, but we will not accord deference to an interpretation that is plainly erroneous or contrary to the clear language of the provision." *Ress v. Office of the State Comptroller*, 329 Ill. App. 3d 136, 142 (2002). "Administrative regulations have the force and effect of law and are interpreted

with the same canons as statutes." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 38. Consequently, a court may not add provisions to a statute nor read any conditions not expressed in the language. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). Contrary to the Merit Board's conclusion, nothing in the drug policy or any statute expressly prohibits the taking of prescription medication from a bottle that cannot be refilled or that such action would constitute the abuse of a prescription medication. The Merit Board's interpretation of the drug policy has violated the above principles.

¶ 52    We also conclude the evidence used to support this unwritten policy that it was abuse of a prescribed medication to ingest that medication after a certain period of time was based on guess, speculation, and conjecture. Accordingly the testimony, which is not competent evidence, cannot support the Merit Board's decision that plaintiff violated the Sheriff's drug policy and is against the manifest weight of the evidence.

¶ 53    In contrast, the Second District in *Gorski v. Board of Fire & Police Commissioners of the City of Woodstock*, 2011 IL App (2d) 100808, ¶ 37, held that the board established that the plaintiff abused prescription narcotic drugs and violated the rules and regulations of the police department as well as agreements with physicians and an agreement to return to work. There, the Woodstock police chief filed a complaint with the board to terminate the plaintiff following multiple positive drug urine tests. *Id.* ¶¶ 3-10. At the hearing, the sheriff testified that he had the plaintiff sign a "return-to-work agreement," which "prohibited him from using controlled substances other than those prescribed by a physician; required him to use any controlled substance only in a manner consistent with the prescription set forth by the prescribing physician; required him to provide the police department with documentation concerning any prescribed medication, indicating that the medication would not interfere with his duties as a police officer; and required him to submit to drug testing within one hour of any such request." *Id.* ¶ 8. The plaintiff failed to comply with this agreement when a urine screen tested positive. *Id.* ¶ 9. Testimony at the hearing was presented from multiple physicians who had treated and prescribed different types of prescription drugs to the plaintiff and that the plaintiff failed to disclose his other prescriptions to subsequent physicians. Further, the evidence showed that the plaintiff had obtained prescription medication from his physician father, had asked one coworker if he could obtain prescription drugs from the coworker's girlfriend, who was a nurse, and asked another coworker to pick up and fill a prescription for him and if the coworker's cousin, also a physician, could provide the plaintiff with pain medication. *Id.* ¶¶ 12-23.

¶ 54    The board initially granted a directed finding in favor of the plaintiff, but the circuit court reversed on administrative review and remanded for further proceedings. On remand, the board ordered that the plaintiff be terminated. *Id.* ¶¶ 25-27.

¶ 55    On appeal, the reviewing court considered the board's initial directed finding in favor of the plaintiff and held:

> "It was uncontroverted that Gorski tested positive for narcotic medications, which are controlled substances, twice after he signed the return-to-work agreement. It was also uncontroverted that Gorski failed to provide documentation that the controlled substances were prescribed by a physician or that the medications would not interfere with his duties as a police officer. Accordingly, in light of the evidence presented by [the chief] as well as Gorski's testimony, a *prima facie* case was established. Therefore,

the Board's decision to grant Gorski's motion for a directed finding was against the manifest weight of the evidence." *Id.* ¶ 40.

¶ 56 Unlike the circumstances presented in *Gorski*, no medical testimony was presented in this case to support the Merit Board's decision. Although we do not hold that medical testimony must always be presented to establish a violation of the drug policy, we conclude that the testimony presented by the Sheriff in this case was inadequate to establish that plaintiff's conduct was an abuse of a prescription medication.

¶ 57 Finally, we find the circumstances of plaintiff's interview with Collins and Hemphill to be troubling. First, plaintiff testified that he brought five prescription bottles, including both lorazepam and diazepam, to his interview, but Collins only reviewed two of the bottles. Williams corroborated that plaintiff brought between two and five bottles and that Collins did not look at all of them. Collins admitted in her testimony that she did not review all of the bottles. She stated she only looked at the lorazepam that plaintiff indicated he took. Plaintiff testified that he took diazepam and advised Collins of this fact. Although the Merit Board discounted plaintiff's testimony as not credible, the testimony at the hearing showed that plaintiff was repeatedly interrupted and threatened by Hemphill during that interview.

¶ 58 Both plaintiff and Williams testified about Hemphill's intimidation of plaintiff, including that Hemphill threatened to arrest plaintiff for possession of a controlled substance. Plaintiff also testified that the repeated interruptions and threats upset him. Collins failed to fully inspect all bottles provided by plaintiff and never forwarded any of the prescription information to Hynes because Collins concluded it was a violation of the Sheriff's unwritten policy.

¶ 59 The evidence at the hearing fails to support the Merit Board's finding that plaintiff violated the drug policy when no written policy provided that his use of his prescriptions was prohibited. The testimony from Collins and Hynes further demonstrated that this was not a written part of the drug policy, but an assumption based, according to Hynes, on her review of her own prescription bottles. This, in our opinion, is not a reasonable interpretation of the drug policy, but instead an unreasonable and arbitrary interpretation based upon speculation and conjecture. After reviewing all of the evidence presented at the hearing, we conclude that defendants failed to satisfy their burden of proof that plaintiff abused the prescription of a legally prescribed drug or controlled substance. Defendants did not present competent evidence about the existence of a policy prohibiting the use of a prescription drug after a certain period of time and that plaintiff's positive drug test established an abuse of a prescription medication. Accordingly, we find the decision of the Merit Board against the manifest weight of the evidence.

¶ 60 We are not unmindful of the importance of the Sheriff's zero-tolerance drug policy; however, if the Sheriff wished to prohibit the use of prescription medication beyond a certain date and that the taking of one's prescriptions under such circumstances would be tantamount to "abuse" of prescription medication, it should so provide.

¶ 61 Since we have held that the Merit Board's decision was against the manifest weight of the evidence, we need not reach the remaining issues on appeal, including whether the drug policy is unconstitutionally vague or that the penalty of discharge was improperly imposed.

¶ 62 Based on the foregoing, we reverse the judgment of the circuit court of Cook County and the decision of the Merit Board terminating plaintiff's employment. Plaintiff's request for

reinstatement with back pay should be granted and the Merit Board is directed to enter an order consistent with this opinion upon remand.

¶ 63       Reversed and remanded.