2020 IL App (1st) 191399

SIXTH DIVISION
JUNE 26, 2020

No. 1-19-1399

| | | |
|---|---|---|
| DIXIE RIOS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE COOK COUNTY SHERIFF'S MERIT BOARD; | ) | No. 14 CH 13387 |
| JAMES P. NALLY; JOHN DALICANDRO; BRIAN | ) | |
| RIORDAN; KIM WIDUP; JOHN R. ROSALES; | ) | |
| VINCENT WINTERS; JENNIFER BAE; and THOMAS | ) | |
| DART, | ) | Honorable |
| | ) | Eve M. Reilly, |
| Defendants-Appellees | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff-appellant, Dixie Rios, was terminated from her employment as a sheriff's police officer in July 2014 stemming from charges that she agreed to help her incarcerated brother's friend by asking someone to "drop charges" against him. Ms. Rios appealed the decision of defendant-appellee, the Cook County Sheriff's Merit Board (Board), to the circuit court of Cook County, which affirmed the Board's ruling. On appeal to this court, Ms. Rios argues that the Board's decision as well as the discipline it imposed on her were against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                   BACKGROUND

¶ 3     Ms. Rios began work as a correctional officer for the Cook County Sheriff's Department in October 2005. She was assigned to the Cook County Sheriff Training Institute beginning in June 2012 and was appointed a sheriff's police officer on April 7, 2013.

¶ 4     In January 2013, Ms. Rios brother, Jose Rios, was incarcerated at the Cook County jail. Ms. Rios accepted a call from Jose Rios on January 23, 2013. In an audio recording of the call, Jose Rios asked Ms. Rios for a "big favor." He asked Ms. Rios to "call somebody" for him, and when she declined, he asked her to ask his "girl" to make the call. Ms. Rios agreed to that request, and Jose Rios gave Ms. Rios the phone number of someone named "Crystal." Jose Rios told Ms. Rios to tell his "lady" to call Crystal and tell Crystal to go to court at "55 [*sic*] West Harrison Street" on Friday and "drop the charges." Ms. Rios began laughing and asked what time. Rios said she was not "getting involved in that s***" but agreed to call Jose Rios' girlfriend and "if she [Jose Rios' girlfriend] wants to do it, fine." Ms. Rios repeated her inquiry about the time and Jose Rios could be overheard during the call, asking someone in the background, the time of the hearing. The person told him 9 o'clock, whereupon Ms. Rios said "I'll have her call."

¶ 5     Ms. Rios accepted a second phone call from her brother the next day, on January 24, 2013, but nothing of substance was discussed in that call.

¶ 6     One day later, on January 25, 2013, Ms. Rios completed a form titled "Cook County Sheriff's Office Known Criminal Organization/Gang Membership Disclosure." On the form, Ms. Rios indicated that she was not a member of a criminal organization or gang, but her brother, Jose Rios, was a Maniac Latin Disciple.

¶ 7     On January 28, 2013, Ms. Rios wrote a memo to the Sheriff's Police Executive Director Scott Kurtovich in which she reported that her brother was an inmate in the Cook County jail, but

that she "currently does not have any physical, written or verbal contact" with him. She agreed to report any future contact with Jose Rios.

¶ 8    Finally, on April 1, 2013, Ms. Rios filled out an "Additional Detail Form," regarding her brother. In the form, she reported her brother's name, nickname, gang affiliation, and date of membership. She was also asked to "[d]escribe in **detail**" her interactions with her brother, to which she reported "The interaction I have with my brother happen [*sic*] when I visit my mother. He resides with her. And for family holiday functions that happen 2-3(xs) a year. I do not ask questions about his affiliation nor do I care to ask. *** While incarcerated I had no contact with Jose Rios."

¶ 9    Two investigators from the Office of Professional Review (OPR) interviewed Ms. Rios on June 3, 2013. During that interview, she initially denied having any direct communication with her brother while he was incarcerated, but then stated her brother called her once on her cell phone and she told him not to call again. She then added that there might have been two calls from her brother.

¶ 10    When she was asked if she agreed to pass a phone number for another detainee along to a person who would call the number and ask "Crystal" to go to court and "drop the charges," she said no. Instead, she said that she had agreed to pass a number to her brother's girlfriend in order to get in touch with a friend of her brother.

¶ 11    The investigators then played the recorded January 23, 2013, conversation. At that point, Ms. Rios and her union representative asked for a short break. When they returned, Ms. Rios said she had made a mistake and should have reported the call to the sheriff's office.

¶ 12    On July 31, 2013, the Sheriff filed a complaint against Ms. Rios for discharge from her job. The complaint alleged that Ms. Rios submitted false reports to the Cook County Sheriff's Office (CCSO), provided false statements to investigators, and interfered "with the prosecution of a criminal proceeding." Among the rules and orders Ms. Rios was alleged to have violated was one requiring CCSO employees to "truthfully answer all questions" when involved in an investigation.

¶ 13    A hearing was held before the Board in the spring of 2014. Ms. Rios was the first to testify at the hearing. She testified that her brother, Jose Rios, was a Maniac Latin Disciple who was in jail in January 2013. She admitted to filling out the CCSO's "Known Criminal Organization/Gang Member Disclosure" form in January 2013 in response to a general order. She also testified that she wrote the memorandum to Executive Director Kurtovich at his direction after he received the initial form that she had completed. She believed the information that she provided in the forms and the memorandum was accurate.

¶ 14    The recording of both calls from January 2013 was then played for the Board. Ms. Rios testified that she only gave her brother's girlfriend the phone number and the court information and never contacted Crystal directly. However, she understood that her brother wanted Crystal to drop the charges against someone. She did not know if Jose Rios' girlfriend called Crystal.

¶ 15    On cross-examination, Ms. Rios testified that the reason she wrote that she did not have contact with Jose Rios during his incarceration was because she was "scared of getting either fired or disciplinary action" against her. She further stated that the reason she agreed to pass the message for Jose Rios was to pacify or appease him. Ms. Rios testified that she did not know what the charges to be dropped were until her meeting with OPR investigators when they informed her that Crystal was a victim of domestic violence.

¶ 16 OPR Investigator Gregory Ernst also testified. He began by explaining the procedures for recording the telephone calls at issue here and then summarized the "gist" of the January 23 phone call between Ms. Rios and her brother. Specifically, Ernst testified that Jose Rios wanted someone to "show up in court and drop charges on a domestic violence case." (However, domestic violence is never mentioned in the phone call.)

¶ 17 During his investigation, Ernst identified the man speaking to Jose Rios in the background during the telephone call, as Buster Lacour, a fellow inmate and also a member of the Maniac Latin Disciples. Also, during the course of Ernst's investigation, Ernst learned that Lacour was the offender in a "domestic case" involving Crystal Torres in June 2012. However, Lacour was in jail in January 2013 on a theft charge. Ernst did not interview Jose Rios, Lacour, Torres, or Jose Rios' girlfriend in connection with this investigation.

¶ 18 Sergeant Stephen Bouffard testified that he oversaw the video and telephone operations in the sheriff's office and that the office uses a system known as Securus to record calls placed by inmates. According to Sergeant Bouffard, Securus was operating accurately on January 23 and 24, 2013.

¶ 19 Saralee Vargas, Jose Rios' girlfriend, testified on behalf of Ms. Rios. Vargas testified that Jose Rios is the father of her child and her boyfriend of eight years. She testified that in January 2013, Ms. Rios asked her to make a phone call to give someone information about a court date; she could not recall the name of the person she was supposed to call, and she never made the call. Vargas testified that she did not know Torres.

¶ 20 Torres also testified on Ms. Rios' behalf and confirmed that she never received a call from either Vargas or Ms. Rios. She further testified that Lacour was her baby's father and that she had

sought an order of protection against him. However, Lacour persuaded her not to appear in court to pursue the domestic violence charge against him.

¶ 21    Ms. Rios testified on her own behalf that the reason she was not forthcoming on the forms and in her interview with OPR was because she believed that revealing her communication with her brother would jeopardize her changes for a promotion. She further testified that she did not know Torres.

¶ 22    Finally, three of Ms. Rios' former supervisors testified that she was an honest person of high integrity. However, on cross-examination, all testified that if the allegations against her were true, their opinion of her would change.

¶ 23    Following closing arguments, the Board took the matter under advisement. On July 18, 2014, the Board issued its written decision terminating Ms. Rios from her position as a sheriff's police officer based on "the evidence presented" and "after assessing the credibility of the witnesses." Specifically, the Board found that Ms. Rios violated CCSO rules of conduct requiring employees to refrain from conduct discrediting the CCSO while on or off duty, making false statements during an investigation, and violating state and federal law. The Board also found that Ms. Rios failed to notify "a supervisor or Communications" when she had knowledge of actual or suspected criminal activity.

¶ 24    Ms. Rios appealed the Board's decision to the circuit court of Cook County in a complaint filed August 18, 2014. Ms. Rios amended her complaint multiple times, and her final, amended complaint, the operative pleading in the case before this court, alleged that the Board's decision was against the manifest weight of the evidence and that termination was inappropriate given her exemplary conduct during her seven years of employment with the CCSO.

¶ 25    Ms. Rios moved for summary judgment on March 13, 2015, on the basis that the Board was improperly constituted. The court ultimately denied that motion on November 1, 2018, based on this court's decision in *Lopez v. Dart*, 2018 IL App (1st) 170733, which held that the *de facto* officer doctrine operated to render the Board's decision valid.[1]

¶ 26    Following a June 19, 2019, hearing on Ms. Rios' complaint, the circuit court granted judgment in favor of the Board, ruling that the Board's decision was not against the manifest weight of the evidence and Ms. Rios' termination was not arbitrary or unreasonable. Ms. Rios timely appealed the court's decision.

¶ 27                                    ANALYSIS

¶ 28    We note that we have jurisdiction to review this matter, as Ms. Rios filed a timely notice of appeal following the circuit court's final order. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 29    On appeal, Ms. Rios challenges both the Board's factual findings as well as its decision to terminate her on the basis of those findings. (On administrative review, this court reviews the final decision of the agency, not the decision of the circuit court. *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 28.) Turning first to the Board's findings of fact, the conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct. *Antlitz v. Forest Preserve District of Cook County*, 2020 IL App (1st) 191415, ¶ 47. We will only overturn an agency's factual findings if they are against the manifest weight of the evidence. *Crawley v. Board of Education of the City of Chicago*, 2019 IL App (1st) 181367, ¶ 17. " 'An administrative agency decision is against the manifest weight of the evidence only if

---

[1] Ms. Rios does not challenge this ruling on appeal.

the opposite conclusion is clearly evident.' " *Village of Buffalo Grove v. Board of Trustees of Buffalo Grove Firefighters' Pension Fund*, 2020 IL App (2d) 190171, ¶ 38 (quoting *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992)). As long as the record contains evidence to support the agency's decision, that decision must be affirmed. *Lopez*, 2018 IL App (1st) 170733, ¶ 70.

¶ 30    In this case, the Board's order accurately recited the evidence adduced at the hearing. That evidence revealed that Ms. Rios lied when completing the form on April 1, 2013.  She stated that she did not have contact with her brother while he was incarcerated, when in fact she spoke with him twice. She also lied during the interview with investigators on June 3, 2013, when they asked her if she agreed to pass a telephone number and name on to Jose Rios' girlfriend for the purpose of telling a witness to drop charges. Ms. Rios only admitted the truth when confronted with the telephone recording. This evidence certainly supports the Board's conclusion that she violated rules requiring employees to truthfully answer all questions when they are involved in an investigation and to refrain from reporting false information.

¶ 31    The same evidence supports the charges that Ms. Rios failed to report suspected criminal activity. To be sure, there was no testimony that either Vargas or Ms. Rios told Torres to drop the charges against Lacour. But not only were the charges, in fact, dropped, the issue of whether Ms. Rios accurately relayed the message is irrelevant where the Board's findings were based on Ms. Rios' failure to *report* that her brother was trying to engage in witness tampering. We cannot say that this finding was against the manifest weight of the evidence.

¶ 32    Ms. Rios' arguments to the contrary stem from the mistaken belief and false premise that the Board found that she intimidated a victim of domestic violence. But nothing in the Board's

decision bears out this contention. While the Board recited Ernst's (erroneous) testimony that domestic violence was mentioned in the phone call between Ms. Rios and her brother, there is no indication that the Board's decision was premised on a belief that Ms. Rios knew that the charges in question were related to domestic violence. Ms. Rios' knowledge of the substance of the charges against Lacour is irrelevant where the charges and ultimate findings resulting in dismissal were based on the fact that she was untruthful in completing the forms and that she lied to investigators. Additionally, her failure to report suspected criminal activity (witness tampering), was also a factor. These allegations had nothing to do with the domestic violence charge and were more than supported by the evidence.

¶ 33    Turning then to Ms. Rios' challenge to the penalty imposed, we review whether the Board's factual findings provide a sufficient basis for its conclusion that there was cause for discharge. *Walker v. Dart*, 2015 IL App (1st) 140087, ¶ 39 (citing *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009)). Cause is defined as a " 'substantial shortcoming' " that renders the employee's continued employment detrimental to the discipline and efficiency of the service. *Burgess v. Illinois State Board of Education*, 2020 IL App (3d) 170076, ¶ 84 (quoting *Davis v. Board of Education of the City of Chicago*, 276 Ill. App. 3d 693, 697 (1995)). Because the Board, and not this court, is in the best position to determine the effect of the employee's conduct on the agency, we accord considerable deference to the agency's discharge decision. *Lopez*, 2018 IL App (1st) 170733, ¶ 75. Specifically, we consider whether the decision to discharge was arbitrary, unreasonable, or unrelated to the requirements of service. *Williams v. Illinois Civil Service Comm'n*, 2012 IL App (1st) 101344, ¶ 9.

¶ 34    Here, pursuant to a request from her brother, Ms. Rios, a sheriff's police officer, agreed to convey through a third party a message to a witness to attend court and drop charges. She may not have followed through on her agreement, but the fact remains that she failed to report her brother's potentially criminal request and lied, multiple times, about speaking with her brother and receiving the request. It was far from arbitrary or unreasonable for the Board to conclude that such conduct rendered Ms. Rios' continued employment detrimental to the CCSO. The job of a police officer requires the utmost integrity and honesty (*Sindermann v. Civil Service Comm'n of the Village of Gurnee*, 275 Ill. App. 3d 917, 928 (1995)), two qualities which Ms. Rios demonstrably lacked in this incident.

¶ 35    In support of her argument that termination was not warranted, Ms. Rios points to her character witnesses, all of whom testified to her honesty and integrity, as well as the fact that she had never been disciplined in her seven-year career with the department. But her character witnesses all testified that if the allegations against Ms. Rios were true, their opinion of her would change. And Ms. Rios' lack of prior discipline does not preclude her dismissal given the severity of her misconduct in the incident in question. See *Bultas v. Board of Fire & Police Commissioners of the City of Berwyn*, 171 Ill. App. 3d 189, 196-97 (1988) (where defendant board had same information regarding plaintiff's unblemished employment history when it imposed termination, reviewing court would not second-guess board's decision in light of the "limited standard of review").

¶ 36    Also in support of her position, Ms. Rios relies on other cases in which this court and the supreme court reversed an officer's termination for lying. But these cases are inapposite to the case at bar. First, Rios cites *Kreiser v. Police Board of the City of Chicago*, 69 Ill. 2d 27 (1977), in

which the plaintiff police officer was terminated after taking a long, unauthorized lunch break in his personal car before proceeding to traffic court. *Id.* at 28-29. While in his personal car, he was stopped by a police department inspector for not displaying a front license plate or city sticker. *Id.* at 29. The police officer then lied to a lieutenant that he had *not* driven his personal car the prior day and did not timely comply with the lieutenant's order to submit a report regarding the events of the prior day. *Id.* The appellate court reversed the circuit court's order affirming the Board's termination decision, and the supreme court affirmed the appellate court. *Id.* at 30-31. Needless to say, a lie about which car an officer was driving on an unauthorized lunch break is a far less serious infraction than lying repeatedly about conversations involving witness tampering.

¶ 37    *Humbles v. Board of Fire & Police Commissioners of the City of Wheaton*, 53 Ill. App. 3d 731 (1977), on which Ms. Rios also relies, is likewise distinguishable. In *Humbles*, a police officer was discharged for disobeying a superior officer and "departing from the truth in an official matter" after he told a sergeant he was going to the county courthouse to testify in a traffic case (when he was actually going to court in connection with a divorce lawsuit, brought against him by his wife) and did not wait for the sergeant to accompany him to the courthouse as requested. *Id.* at 733. He testified that the reason he lied was because he was embarrassed about the divorce proceedings. *Id.* This court reversed the circuit court's order affirming the Board's decision to discharge the police officer on the basis that his misconduct did not imply that he was unfit to serve as a police officer, undermine the public confidence in the police department, or lower morale of fellow officers. *Id.* at 735.

¶ 38    The officer in *Humbles* lied about a personal matter that had no bearing on his job performance. Ms. Rios, on the other hand, lied about a conversation in which she was asked to

engage in witness tampering, and failed to report that illicit request. This substantially undermines the public trust in the sheriff's police department, and the Board did not act arbitrarily in terminating her as a result.

¶ 39                                    CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41    Affirmed.

---

**No. 1-19-1399**

---

| | |
|---|---|
| **Cite as:** | *Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-CH-13387; the Hon. Eve M. Reilly, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Christopher Cooper, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Stephanie A. Scharf and George D. Sax, of Scharf Banks Marmor LLC, of Chicago, for appellee Thomas Dart.<br><br>No brief filed for other appellees. |

---